## JAMES BRENNAN V. THE STATE.

1. No case has yet occurred in this State wherein the courts have tolerated affidavits of jurors to impeach their verdict. If ever allowed, the case must be an extreme one and the necessity imperative. They were properly disallowed in the present case, though the charge was murder and the conviction was for manslaughter.

2. A juror in a murder case stated on his *voir dire* that he was a freeholder in the State. Being found guilty of manslaughter, the prisoner moved for a new trial, alleging that the juror was not a freeholder nor qualified to serve on the jury, and offered to prove the allegation by the juror himself. *Held*, that the proof offered was properly rejected, and the motion rightly overruled.

3. It is no objection to jurors summoned on a special *venire*, that they belonged to the regular panel for the term.

4. (On motion for a re-hearing.) The court intimates that notwithstanding a juror in a criminal cause was neither a freeholder nor a householder, the jury was not thereby invalidated.

5. The Code of Criminal Procedure (Article 2491, Paschal's Digest) reverses the rule of the common law respecting the construction of its provisions, and requires that they be liberally construed, for the prevention and punishment of crime.

APPEAL from Criminal Court of Galveston county. Tried below before the Hon. W. R. Fayle.

The appellant was tried at the March term, 1869, for the mur-. der of Edward W. Kemp, and was found guilty of manslaughter. The jury assessed his punishment at five years in the penitentiary.

He moved for a new trial on the grounds substantially disclosed in the opinion, and which, he alleged, had not come to his knowledge until after his trial. The motion was overruled, and he appealed.

*McLemore & Hume,* for the appellant, cited Paschal's Digest, Articles 3040 to 3044; 2 Graham & Waterman on New Trials, 221, 471; State v. Babcock, 1 Conn., 401; McKinley v. Smith, Hardin's (Ky.) R., 167; Peirce v. Bush, 3 Bibb, 347; Herndon v. Bradshaw, 4 Bibb, 45; Vance v. Haslett, 4 Bibb, 191; Hanks v. The State, 21 Texas, 526; Givens v. State, 6 Texas, 343; McGee v. Shaffer, 9 Texas, 24. (The argument of these counsel will be found further on, being addressed to their motion for a rehearing.)

*E. B. Turner,* for the State, cited Burns v. Payne, 8 Texas, 159; Kilgore v. Jordon, 17 Texas, 341; Mason v. Russell, 726; Little v. Birdwell, 21 Texas, 613; Thomas v. Zushlag, 25 Texas, 225; Shaw v. State, 27 Texas, 758; Johnson v. State, 27 Texas, 758.

WALKER, J.—We have carefully examined the record in this case, and given due attention to the argument and brief of appellant's counsel, as well as those of the Attorney General.

The points most insisted on by counsel for appellant are, first, that R. R. Farish, the foreman of the jury that tried appellant, was not a legally qualified juror. Second—That several of the persons were of the regular jury of the term, and were therefore not legally qualified to sit upon the jury. Third—That the verdict was contrary to law and evidence.

The record shows that R. R. Farish had been interrogated as to his qualifications to serve on the jury, and had answered the questions satisfactorily, and especially as to being a freeholder.

The appellant's counsel offered in support of their motion for a new trial to prove by the juror that he was neither a householder in the county nor a freeholder in the State.

In Johnson v. The State, 27 Tex. R., 758, the court say: "No case has yet occurred in this State wherein the courts have *tolerated* affidavits of jurors made to impeach their verdict; if ever admissib'e, they can only be allowed in an extreme case and under an imperative necessity for the accomplishment of justice." (See also Shaw v. The State, 27 Tex. R., 750, and numerous antecedent cases in the Texas Reports.) There is a case excepted by statute, where the jurors misbehave in any manner in their retirement.

We see no force in the objection that some of the jurors were regular jurors, and know of no rule or principle of law which would forbid their being summoned on the special venire, should the court see proper to excuse them from the regular pannel. This is even a matter of necessity in some of the frontier counties where it is difficult to obtain the requisite number of qualified jurors.

Nothing improper appears in the charge of the court, nor is it even objected to. The verdict is in strict accordance with the law, if the facts are sufficient to support it. The evidence is very conflicting; no two of the witnesses agree in their statements as to the most material facts.

The surgeon, whose evidence has been liberally commented on, is not consistent with himself. On his examination-in-chief he says deceased died from the wound; on cross-examination he states that he died from inflammation caused by the *suture*, which had been unskilfully performed; that the wound was of that class not generally considered mortal. He had treated seven such

wounds and had healed four, but three had died—not, of course, from unskillful *sutures*. By this evidence a man thus wounded would have four chances to recover and three to die in the hands of a surgeon of the skill of the witness. The law cannot act on such testimony; we must have something more certain and tangible.

The evidence was so conflicting on the trial that we would not undertake to say that the jury have given it a wrong solution. The witnesses were, several of them, of the crowd described by one of their own number—as a drinking crowd, "all talking fighting talk," urging on a fight.

The only palpable injustice done, so far as we can see, is that all those who were thus *particeps criminis* in this transaction, are not in a like position with Brennan. There is certainly a possibility that he may have been wrongly convicted, but it rests entirely upon the evidence whether it be so or not, and of this the jury were the best judges. The judgment of the court below is affirmed and cause remanded.

Affirmed.

*McLemore & Hume*, moved for a rehearing. They discussed the evidence and other questions in the case, and argued the points decided at some length, as follows: It is submitted that the reasoning of the court, on the hypothesis that the introduction of Farish to show his disqualification, would result in permitting jurors to impeach their verdict, is erroneous. Webster defines the meaning of "impeach" thus: "To accuse; to charge with a crime or misdemeanor; to charge with impropriety; to call in question, as to impeach one's motives or conduct." Certainly Farish was not called to do either of these things, when it was simply proposed to show by him the existence of a fact *in pais* out of the record, and with no possible relevancy to his motives or conduct in the case, and having no bearing whatever upon the correctness

or error of the verdict he had rendered! In the two cases cited by the court to sustain this view, we say, with all respect, the question at bar was not involved. In Johnson v. The State, 27 Tex. R., 758, there was an attempt made, on motion for new trial, to prove by three jurymen that they misconstrued the law given in the charge of the court. This court, on that state of facts, decided wisely enough that it was an effort by the jurymen to impeach, that is, " to call in question " the justice and right, under the evidence, of a verdict deliberately rendered by them, and they could not be permitted thus to stultify themselves. In Shaw v. The State, there was an attempt to secure a new trial, on the ground that one of the jurors stated on his *voir dire* that he had not heard the testimony before the magistrate in the case, while the fact was he had been present at that time, but it is not stated in the affidavit that the fact was unknown to the prisoner on the trial, or that he had been misled by the jurors' answers.

The court very properly ruled the ground not well taken, and stated that if there had been a false statement, and the fact was unknown before verdict, the point should have been saved by bill of exceptions, setting forth the evidence and what occurred on the trial. But surely this case is not authority in the most remote degree upon the point under discussion here. In Little v. Birdwell, cited by the Attorney General, a new trial was sought and refused, because a paper which had been read in evidence was by mistake withheld from the jury on their retirement, and had it been in their hands a different verdict would have been rendered. This is supported by affidavits of jurors. This court says, in that case, that it is an attempt by jurors to impeach their verdict, and cannot be allowed. (21 Tex., 612.)

Of a like character is the case of Kilgore v. Jordan, 17 Texas Reports, 341. There a motion was made for new trial, on the ground, among others, that the jury misapprehended the law, supported by the affidavits of two of the jurors, to the effect that

they had found for the plaintiff on the ground that there was evidence wrongly understood, and applied by them to the law of the case. The motion was overruled, and on assignment of that order as error this court say the objection will not avail; that "the views and notions which jurors individually or collectively may entertain of the law cannot affect their finding. Jurors may be polled to ascertain their concurrence, but not on the grounds on which they reached their conclusions. If such inquiries were tolerated, and their mistakes in law be allowed to defeat their action, trials by jury would become nearly, if not altogether, an impracticability." The reference of the Attorney General to this case, and, indeed, all the cases he has cited as authority on the case at bar, is, we confess, hard to be understood. In still another of his authorities (Burns v. Paine, 8 Tex., 159,) it is held that the affidavit of a juror cannot be received as to "improper conduct of the jury."

Now, we admit, in all its length, breadth and authority, the rule in these cases about the non-admissibility of a juror to prove either his mental or moral incapacity as connected with a verdict he has rendered ; but, we repeat, the rule cannot apply where the facts upon which it was built do not exist. We venture to say, no case can be found wherein a juror is said to impeach his verdict, unless his affidavit relates to some unfairness, misconduct, stupidity or undue influence indulged in or betrayed by himself or some other member or members of the panel. Upon this proposition we are sustained by the books. (See particularly the case of Thomas v. Zushlag, 25 Supp. Tex. Reps., 226, 229, for this doctrine.) Graham & Waterman, (vol. 3, pp. 1428, 1450,) in their work on New Trials, enumerate all the causes for which jurors can impeach, or attempt to impeach, their verdict. They are : First— By showing misconduct of jury. Second—That the verdict is found on illegal testimony. Third—That the jury misconceived the charge of the court. Fourth—That the jury misapprehended the law. Fifth—That the jury did not assent to the verdict.

Sixth—By showing the reasons or motives of their determination. Seventh—By showing the mode adopted in arriving at their verdict. Eighth—That they would have found otherwise if they had known the effect of their verdict. Ninth—By offering matter tending to criminate the jury. These are the only grounds upon which jurors can attempt to impeach their verdict, and the court will at once perceive that Farish's testimony would have established neither of them.

Third—If it be considered that these arguments consist with truth, then the question may recur, is not the statement of the judge below that Farish answered affirmatively to the questions of qualification, conclusive of the fact of his qualification? We respectfully say not, and that he should have been allowed to make his explanation and deny the fact on the motion for new trial. The law requires a juror to possess the qualification. Now, does the affirmative reply to the question make an untruth a truth? If it is a fact that he is not qualified, does his statement that he is destroy that fact? And if he is disqualified, is not the prisoner entitled to the sequence of that disqualification whenever established, unless he has waived it? Grant that the juror did answer the question as recited in the remarks of the judge below, could it not have resulted from an indistinct hearing or understanding of it? And if such was the case, ought not the court to have permitted its proof; and if it was not the case, how could the cause of justice have been imperilled by allowing it to appear a second time?

Fourth—Assuming then that Farish was not a freeholder or householder, was he a proper juror? On this point, we can only beg the court's attention to the brief already filed in the cause, and suggest these additional considerations: The Constitution gives the citizen the right of jury trial. The law defines the qualification of jurors. One of its requirements is that he be a freeholder or householder in the State or county. Article 2492, Pas-

chal's Digest, inhibits the waiver of that right by a defendant in a criminal cause after plea of not guilty. We hold that the jury meant is the one possessing all the qualifications prescribed by law. The freehold or household qualification is a *sine qua non*, and a verdict by a jury, one or more of whom does not possess it, is absolutely void. Would a man be harmed by a verdict rendered by eleven men and one boy fifteen years of age, even if he knew, before verdict, of the nonage of the boy? Clearly not.

WALKER, J.—Every member of the court has given due consideration to the motion for a re-hearing in this case, and we admire the fidelity and zeal of counsel for his client in exhausting every legal and logical argument which could be urged in support of his motion. It is admitted that some English cases and some in one or two of the New England States have gone nearly to the point claimed by counsel in this case; but we are still of opinion, that the current and controlling authorities, including those of our own State, are overwhelmingly against it. In England, Ireland and Scotland, where about ten thousand persons out of near forty millions own the whole domain, an estate in land has always given great dignity as well as social and political importance to the owner. And in New England, a social as well as political distinction has been kept up between the landed and landless. Several of these States have maintained a freehold qualification of suffrage. But in a country where lands are still so cheap that it almost makes a man poor to own them, a man may be "a man for a' that" and own no land. We have no doubt that Brennan was tried by his peers, to say the least; and though our law keeps up the freehold or household qualification for jurors, yet under that same law, a man accused of felony may waive almost anything but trial by jury. And suppose it be admitted that one of the jurors was not a freeholder or a householder, did that circumstance in itself destroy the jury in a legal sense? We clearly think not.

XXXIII—18

But we are not permitted to take this view of the subject, for it does appear that the juror, R. R. Farish, had by his own oath (the only manner pointed out by law) proved himself a qualified juror. He could not have been compelled to testify differently if the court had considered him qualified to do so, for it would have criminated him. We do not hesitate in saying, that there was no error in the court refusing to hear an affidavit from him or putting him on the stand. We do not wish to make further comment on the evidence in this case. We have, at the present term of the court, refused to reverse the courts below on cases where there was much less testimony to support the verdict than in this case. The argument is not unfrequently made before us, that in these criminal cases we must construe the law strictly against the State. We will here refer to Article 2491, Paschal's Digest, and we quote the article, which reads thus:

"The provisions of this code shall be liberally construed, so as to attain the objects intended by the Legislature, the prevention, suppression and punishment of crime." Here the rule of the common law is reversed, and though this court will not go beyond the express letter and meaning of the law knowingly, yet we must meet its requirements, or we would make ourselves most unworthy public servants; and we trust that this will not be considered a spasm of public virtue. It should be regarded as the very highest duty to the State, the honest performance of which is incumbent not only upon this court, but on every judicial functionary in the State.

We feel it due to the learned counsel for the appellant to say that we commend his industry and untiring zeal for his client; but the motion must be denied.

Rehearing refused.