This is an appeal from a judgment against appellant on an action brought by him against appellee for damages for personal injuries to him alleged to have been caused by the negligence of appellee.
Conclusions of Fact. — Appellant, at the time of the injuries complained of, was in the service of appellee in its yard and shops at Denison in the capacity of tool inspector. His duties were to inspect the tools carried by the defendant's locomotives, and to see that said tools were all in their proper places and were in proper condition. Some of the tools were carried in small tool boxes on the front part of the tenders, but the heavier tools, such as frogs, jacks, and heavy chains, bars, etc., were kept and carried in a long box constructed on the rear end of the tenders. Appellant, at the time he was injured, had been in this department of the service only one day. Prior to this time he had been working for appellee for about eight years in different capacities, but never before as tool inspector.
The day before the accident appellee sent a man around with appellant to show him what tools were necessary to go with the engine, *Page 268 
and to instruct him in his duties. He went to work on this job on December 1, 1900, and on that day about 5:30 o'clock, while he was inspecting the tools in the tool box on the rear end of tender No. 111, the lid of the box fell on the back of his head and knocked his head down on the edge of the box and cut his lip, crushed some of his teeth, and caused the injuries to his head and spine of which he complains. The tool boxes of all the engines which were shown to appellant when he was instructed as to his duties on the previous day were situated on the top of the tenders, and the lids of all such boxes as he saw opened back far enough to prevent them from falling when opened. Engine and tender No. 111 were not then in the yards, and appellant never saw same to notice them until he went to inspect the tools in the box at the time he was hurt. This box was situated just behind the tender. It was made of iron or sheet steel about one-fourth of an inch thick; was about six or seven feet long, was about one foot and a half wide and about a foot deep. It was set crosswise behind the tender on a projection of the tender frame. The lid, which was of the same material as the box, constituted the whole top of the box. It was fastened to the top of the box with hinges, and when closed it sloped to the front so as to turn water. It was about eighteen inches wide. Its weight was variously estimated by the several witnesses at from 60 to 125 pounds. The box was set so close to the tender that when the lid was opened back against the tender it stood almost perpendicular. There were no means provided to fasten it so as to keep it from falling when opened.
Appellant, after inspecting tools all day, came to this box about 5:30 in the evening, raised the lid and pushed it back against the tender as far as it would go, and bent over the box to inspect the tools. While doing this the lid fell on the back of his head and inflicted the injuries of which he complains. The tools which he was required to inspect were heavy, and he had to use both hands to move them so that he could inspect them. He had never before had any experience in handling these boxes, and he was given no instructions as to how they should be handled. It was not a part of his duty to inspect the boxes. That duty devolved upon the engine and tender inspector. Appellant testified: "I went around to inspect the tools on this engine (No. 111). It was standing in the roundhouse and I think the electric lights were burning. I took my key and unlocked it. It was just an iron box like the ones that are up on top of the engine. A man could see it and look it over. It was just setting on the back of the tender there. There is a kind of a piece that extends out about on a level with the bottom of the box, and when I unlocked the box I got up on that, doubled up like, and opened the lid of the box. I pushed it back as far as the tank would let it go and stooped over to examine the tools; went to work inspecting the tools, and the lid fell on my head. The lid was standing almost straight up, and fell and hit me on the head." *Page 269 
Q. "Now, when you pushed it back against the tank, how did it go?"
A. "Stood almost straight up."
Q. "Why didn't it go back further?"
A. "Why, the tank wouldn't let it go any further — just as far as it would go."
Q. "Did you try to push it any further?"
A. "I could not push the tank further, anything like that."
Q. "You pushed it back as far as you could, and when you saw you couldn't push it back any further, then you bent down and went to work, did you?"
A. "Yes, sir."
Q. "And it was so nearly straight up that it would not stand and it fell and hit you, is that right?"
A. "Yes, that's right. It fell. It was about straight."
Q. "Why did you try to get it further back, Mr. Moore?"
A. "I just pushed it back as far as it would go until it hit the tank. I wanted to open it."
Q. "But you tried to push it even further; then you could not do it on account of the tank?"
A. "I could see it against the tank, just pushed it back and it hit the tank."
Q. "You could see it — you saw it was useless to try to push it any further, did you?"
A. "Yes, sir; I guess so."
Immediately after receiving the injuries complained of appellant was sent by the roundhouse foreman to the company's physician, who dressed his lip and extracted the broken teeth. He then went home, and after a few days he seemed to get over his injuries to some extent, and on the 10th day of December, 1900, he went back to work for defendant, taking his old job as engine watchman again. Before going to work he signed a release of the injuries to his lip and teeth. By the terms of the release same was restricted to these injuries. He received no consideration whatever for executing this instrument. He never read it, and did not know its contents when he signed it. Neither did he then know that he had been seriously injured by the blow on the back of his head. His head hurt him some, but Dr. Acheson, the company's physician, told him that would soon wear off, and he believed and relied on the doctor's statement, and went back to work. He worked there until the morning of the 26th of that month, when he went home and took to his bed, and for some time his suffering was intense. In about two weeks paralysis developed, and he has been practically helpless ever since. The evidence is conflicting as to the extent of his injuries, but it is ample to sustain a finding that his injuries are permanent, and that he is totally disabled by reason thereof. *Page 270 
 Conclusions of Law. — The appellant complains of the third paragraph of the court's charge wherein the jury were instructed that "a railway company is not liable to its employes for injuries resulting from obvious or patent defects in tools or appliances with which they are furnished to discharge their duties, that is, defects which are as open to the observation of the employe as to the company; and in such case the employe assumes the risks incident to the use of said defective tools or appliances." Also of that portion of the seventh paragraph of the charge wherein the jury were instructed that if the defects, if any, "were as open to the observation of plaintiff as they were to defendant, then plaintiff could not recover." The third paragraph was stating a proposition of law. The seventh paragraph was applying the law to the facts, and is as follows: "If you believe from the evidence that the box, in the manner in which it was constructed, was reasonably safe to enable the plaintiff to discharge his duties as tool inspector with a reasonable degree of safety, or if you believe, from the evidence that defendant exercised ordinary car to furnish a box and appliances reasonably safe for use by plaintiff in the discharge of his duties, or if you believe from the evidence that the injuries, if any, received by plaintiff, resulted from one of the risks ordinarily incident to the business in which he was engaged, you will find for the defendant. Or if you believe from the evidence that the box was defectively constructed and was not reasonably safe to enable plaintiff to discharge the duties of his employment with reasonable degree of safety, but you further believe from the evidence that the defects, if any, in the construction of said box, the position of the lid when opened, and the danger to be expected from the falling of the lid of said box, were as open to the observation of plaintiff as they were to the defendant, or if you believe from the evidence that the plaintiff, in the discharge of his duties as tool inspector, in opening the lid of the box and making the inspection of the tools therein, failed to exercise such degree of care as an ordinarily prudent person would have exercised under the same or similar circumstances, and thereby caused or contributed to cause his injuries, if any, you will find for the defendant." The particular parts of the charge complained of are those where the court told the jury that the company would not be liable if the defects were as open to the observation of the employe as to the company. It is contended that the language used by the court was calculated to lead the jury to believe that it was the duty of appellant to have inspected the box to ascertain that it was free from defects, otherwise he assumed the risk, and could not recover for injuries resulting from defects that he could by ordinary care have discovered. It is also contended that a knowledge of the defect does not necessarily carry with it a knowledge of the danger. That a servant may have knowledge of a defect, or is charged with knowledge of it because obvious, but if ignorant of the danger incident to and attending the defect, he is not precluded from recovering damages incurred by reason of such defect. *Page 271 
In the case of Railway v. French, 86 Tex. 96, the negligence charged was that the foreman, Collins, placed a heavy piece of timber on the ground, and caused a ditch to be dug too close to it, from which cause the dirt caved and caused the timber to fall on plaintiff. The court held it was error to refuse a charge asked by defendant as follows: "If the danger to be expected from the caving of the bank was as open to the observation of French as it was to the foreman, Collins, then plaintiff can not recover, because in such case French assumed the risk of being injured by the caving of the bank." The court quotes with approval from Railway v. Lempe, 59 Tex. 22, as follows: "Where the servant has equal knowledge with the master of the danger incident to the work, he takes the risk on himself if he goes on with it;" and further on in the discussion the court says that French "was bound to take notice of the operation of the ordinary laws of nature that brought about the result."
The charge here complained of was not, in our opinion, calculated to impress the jury with the idea that it was the duty of plaintiff to make an inspection of the box for defects. While the charge might not be proper under some circumstances, we think under the facts of this case the charge was not error. There was no complication in the construction of the box. There was no secret or hidden defect that was not open to observation. The only defect claimed was that the tender would prevent the box lid from going far enough back, when open, to keep it from falling. The testimony of plaintiff shows that he saw and observed the extent to which the lid could be pushed back, and that when pushed back to the tender it was about straight. Its position was as open to him as it could have been to the defendant. Common intelligence and observation teach that a box lid in that position is liable to fall. Such is the operation of the laws of nature, of which plaintiff is bound to take notice.
The appellant complains of the action of the court in refusing to give a special charge to the effect that the law did not require plaintiff to inspect the appliances furnished him before using same. The court in its main charge instructed the jury as to the duty of the railway company to furnish safe appliances, and that plaintiff had the right to assume that such duty had been complied with. This was sufficient under the circumstances, and the court did not err in refusing the said requested charge.
There was no error in the court refusing to give appellant's requested charge relating to the company's duty to warn appellee of the danger incident to the work assigned, because, in our opinion, such a charge was not called for by the facts of this case.
Other assignments of error are urged against the charge of the court, but we think the law was fairly presented to the jury, and such assignments are overruled.
Soon after the injury plaintiff, for a valuable consideration, executed *Page 272 
a release to the company for certain injuries sustained, to wit, knocking out two upper teeth, and cutting his lip. This release was offered in evidence by appellee. Plaintiff offered to testify that at the time he executed the release he did not understand that he was injured other than as specified in said release, and none other was considered by the parties, and was not intended to be included in said release. Upon objection this testimony was not admitted, and the action of the court in excluding same is assigned as error. There was no error in excluding this evidence. There was no ambiguity about the contents of the release. It specified certain injuries, and was sufficiently explicit to show the intention of the parties. The court admitted testimony as to the injuries that developed after the release was signed and not then known, and instructed the jury that such injuries might be considered in estimating the damages in the event they found for the plaintiff. Besides, plaintiff's counsel stated to the court "that in view of the release introduced in evidence, they would make no claim on this trial for the injuries to plaintiff's lips and to his teeth." Under these conditions we are unable to see that any injury resulted to plaintiff, if in any event said testimony was admissible.
One of the grounds urged for a reversal is the alleged misconduct of the jury after retiring to consider of their verdict. This ground was presented in the motion for a new trial and supported by the affidavits of a deputy sheriff, a bailiff, and one of the jurors. Blalock, the deputy sheriff, swore in substance that he was in attendance on said court; that while the jury were considering their verdict one of the jurors opened the door and requested him to furnish them with a rule with which to mark some measurements; that he obtained a strip of lumber and tendered it to said jury, but was informed that they did not need it, as they had already obtained a rule. That while the juror was talking to him the door of the jury room was open, and he saw one of the jurors have in his possession in said room a piece of plank about two feet or two and a half feet long and about fourteen inches wide, which looked like a back of a picture frame; that same was a light piece of timber. One of the jurors remarked, referring to said plank, "That will do." Sale, who was bailiff for the grand jury, swore that while the jury in this case were deliberating on the verdict, one of the jurors opened the door and called for a deputy sheriff. He answered the call, and was informed that a rule was desired with which to make some measurements. He procured one and gave it to the jury. After the verdict was returned he went into the jury room, got the rule, and returned it to the place where he had obtained it.
Dodson, one of the jurors, swore: "That after the jury had received the charge of the court, and while they were deliberating on their verdict, they stood at first eight for the plaintiff and four for the defendant. That during their deliberation they procured a rule about eighteen inches long, that was furnished to them at their request by Deputy *Page 273 
Sheriff Sales. That they also procured a box lid which was about eighteen inches wide, with which they made some experiments in the jury room in order to demonstrate whether or not plaintiff could have been struck on the head as he claimed to have been. That after making such experiments six of the jurors who had theretofore been for plaintiff voted in favor of finding a verdict for defendant. That this affiant was still unsatisfied, but after seeing a similar box in the Cotton Belt yards in the city of Sherman, as he came from home to town, and after inspecting same, consented to render a verdict in favor of defendant, and the verdict was thus rendered. But he further says that seeing said box and inspecting same did not cause him to consent to the verdict."
It seems to be the settled rule in this State that the affidavits of jurors will not be heard to impeach their verdict, except in extreme cases, and this case in our opinion is not within the exception. Mason v. Russell, 1 Tex. 721; Boetga v. Landa, 22 Tex. 105; Johnson v. State, 27 Tex. 758
[27 Tex. 758]; Bruman v. State, 33 Tex. 266; Davis v. State, 43 Tex. 189.
Eliminating the affidavit of juror Dobson, the affidavits of Blalock and Sales do not show such misconduct as required a reversal of the judgment.
There are other errors assigned, but none show material error, and the judgment is affirmed.
Affirmed.