Argued October 16, affirmed November 6, rehearing denied December 18, 1917.

## SHEPHERD *v.* INMAN–POULSEN LUMBER CO.

(168 Pac. 601.)

**Trial—Reading Exhibits.**

1. Section 866, L. O. L., providing that when a writing is shown to a witness and proved by him it shall be read to the jury while the witness is on the stand or on his recall as a witness, does not authorize reading, by plaintiff as part of his testimony, of exhibits already in the record, not proved by him or introduced while he was on the stand.

**Trial—Order of Proof—Right to Regulate.**

2. The court may regulate the order of proof and postpone the introduction of exhibits.

**Evidence—Hearsay—Opinion Evidence.**

3. In an action to recover attorney's fee, it was not error to refuse to allow plaintiff to testify to the report of one of the cases in which he appeared, as a leading case; the proffered testimony being hearsay

about what the editor thought of the importance of the principle involved.

**Attorney and Client — Action — Value of Services — Evidence—Judgment-roll.**

4. It was proper, on cross-examination of plaintiff attorney, to introduce a judgment-roll in a former case in which he had been engaged for defendant, to show that plaintiff had gone over the same ground, and did not have to labor so hard as represented.

**Attorney and Client — Evidence — Action for Compensation — Admissions Against Interests—Question for Jury.**

5. In an action for legal services performed between certain specified dates, independent of the matter of accounting alleged in the answer and as combating plaintiff's claim under the general issue, defendant could show that it requested a statement of plaintiff's entire services to a certain date, and that Exhibit "C" was what he gave in response; it being in a sense an admission, against plaintiff's interests, enough to take the question to the jury.

**Evidence—Hypothetical Questions.**

6. If there is any evidence on the point, a party has a right to cover it with a hypothetical question, although there may be contradictory testimony.

**Appeal and Error—Hypothetical Questions—Testimony to Support— Presumption.**

7. In the absence of a direct statement in the bill of exceptions that there was no testimony supporting a hypothetical question, it will be presumed that the court did its duty in permitting the question to be framed as it was.

**Evidence—Opinion Evidence—Competency—Value of Legal Services.**

8. Where a witness had testified that he knew about the case and was interested in reading the decision and heard the hypothetical question propounded to others, the court did not err in allowing the witness, a practicing lawyer of fourteen years' experience to give his opinion as to the reasonable value of plaintiff's services in some of the litigation mentioned in the complaint, it being for the court to determine competency and for the jury to weigh the testimony.

**Evidence—Opinion Evidence—Competency—Value of Legal Services.**

9. Allowing defendant's witness to testify that he had been a deputy city attorney and was familiar with the litigation against defendant and to enumerate the important cases in which he had been engaged for the city was proper to show the professional standing of the witness and his knowledge, and was sufficient to let in his opinion about the reasonable value of plaintiff attorney's services to defendant.

**Appeal and Error—Evidence—Opinion Evidence—Discretion—Harmless Error.**

10. In suit for legal services, allowing deputy city attorney familiar with city's litigation against defendant for which plaintiff sought compensation, to testify as to the necessity of continued attendance at meetings of the council was within the discretion of the court, and

in any event harmless to plaintiff, in view of answer that it would depend entirely on what was taking place at meetings, etc.

### Appeal and Error—Admission of Testimony—Harmless Error.

11. In suit involving compensation for plaintiff's services rendered defendant in a suit with city, allowing city attorney to testify that it was not intention of city to destroy defendant's plant was harmless as to plaintiff.

### Trial—Argumentative Testimony—Striking Out.

12. That part of the witness' answer that if the decree granted defendant the use of the premises so long as they operated a sawmill it would be more valuable than the fee simple was properly stricken, being merely argumentative.

### Appeal and Error—Remarks of Court—Reversible Error.

13. In a suit for legal services, plaintiff in rebuttal sought to explain the items in his bill for services, known as Exhibit "C," whereupon the court said: "Why do you wander on that way? All that has been before the jury. * * I am not going to permit you to go over things again and again." Plaintiff thereupon claimed the right to explain an item of the exhibit, whereupon the court answered, "Go on and state it; if the jury can stand it I can." *Held*, that if the language of the court was impolite or even erroneous, it was not of sufficient importance to justify a disturbance of the verdict.

[As to manner or tone of court in remark or instruction as prejudicial error, see note in Ann. Cas. 1912A, 1006.]

### Trial—Testimony not Offered in Chief—Exclusion.

14. In suit for legal services, testimony as to whether defendant's officer made more than one employment of plaintiff was a matter for plaintiff's case in chief; and, he having had an opportunity to testify once on the same subject, that was sufficient.

### Attorney and Client—Evidence—Admissibility.

15. In suit for legal services, testimony that defendant was satisfied with the decree in a certain case was wholly immaterial.

### Attorney and Client—Action for Services—Instructions.

16. Testimony to the effect that defendant's officer called upon plaintiff attorney for a bill for his services, which bill being furnished, defendant paid, was sufficient to justify the instruction that if there was a settlement and defendant paid all that was required of it, plaintiff was not entitled to recover for such period.

### Appeal and Error—Reservation of Grounds of Review—Submission of Issue—Necessity of Submitting Instruction.

17. Plaintiff, not having framed and submitted an instruction relating to the legal effect of a document, cannot complain that the court did not interpret it, but submitted it to the jury as a matter of fact.

### New Trial—Impeachment of Quotient Verdict—Affidavits of Jurors.

18. In case of a quotient verdict, the affidavits of the jurors cannot be received to impeach it.

From Multnomah: George N. Davis, Judge.

Department 1.   Statement by Mr. Justice Burnett.

The plaintiff brought an action on the *quantum meruit* for $25,000 for legal services which he claims to have performed for the defendant as an attorney between January 1, 1908, and the same date in 1914, no part of which has been paid except $500.

The answer traversed the complaint in the main and alleged that on December 2, 1909, the parties had an accounting concerning all the services performed by the plaintiff for the defendant to and including November 29th of that year, and thereupon the defendant paid the plaintiff in full for all services up to and including the November date named, they being the same services mentioned in the complaint as having been rendered between January 1, 1908, and November 29, 1909.   After various allegations about the reasonable value of plaintiff's subsequent services the answer sums up that their fair worth was and is the sum of $2,545, of which $500 has been paid, leaving a balance of $2,045, which the defendant offers to pay.

The reply traversed the answer in material particulars.   A jury trial resulted in a verdict in favor of the plaintiff in the sum of $5,500, with interest thereon from January 1, 1914, at 6 per cent per annum.   Judgment having been rendered accordingly, the plaintiff appeals.                 Affirmed.   Rehearing Denied.

For appellant there was a brief and an oral argument by *Mr. William Wallace McCredie.*

For respondent there was a brief over the names of *Messrs. Cake & Cake* and *Mr. Fred L. Everson,* with an oral argument by *Mr. William M. Cake.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1, 2. The bill of exceptions contains twenty different assignments of error. The first two relate to the refusal of the court to permit the plaintiff, while he was testifying as a witness, to read to the jury excerpts from certain exhibits that had been introduced in evidence. One was a petition for the vacation of a street in the City of Portland and the other was a deed executed by Inman-Poulsen Company to Inman, Poulsen Lumber Company describing as lots and blocks the premises which were occupied by the defendant and in controversy in one of the suits in which the plaintiff had rendered some of the legal services in question. The exhibits themselves were already in the record and were the best evidence of their contents. It does not appear that they had been proved by the plaintiff as a witness to their execution nor that they had been introduced while he was on the stand. Section 866, L. O. L., prescribes that:

"Whenever a writing is shown to a witness, it may be inspected by the adverse party and if proved by the witness shall be read to the jury before his testimony is closed, or it shall not be read except on recalling the witness."

The instant record does not disclose a situation delineated by the section quoted; hence, plaintiff as a witness could not insist on reading the exhibit as part of his testimony. It would have amounted to an argument of his case from the witness-box. Even if the exhibits had not been introduced in evidence the court had the right to regulate the order of proof and could postpone their introduction until a later period.

3. Noted under the third exception is the refusal of the court to allow the plaintiff to testify to the report

of one of the cases in which he appeared as counsel for the present defendants in 46 L. R. A. (N. S.) as a leading case. There was no error in this ruling. At best his proffered testimony was hearsay about what the editor of that series of reports thought of the importance of the principle involved in the case reported.

4. In the fourth exception the plaintiff complains that on his cross-examination and without previous testimony on the subject the defendant was allowed over plaintiff's objection to introduce a judgment-roll which was not in issue. It seems from the bill that the plaintiff had engaged in litigation for the defendant here in a cause involving issues similar to those in the case where he did the work for which he here claims remuneration. It was proper to show on cross-examination that the plaintiff had gone over the same ground in another case and did not have to labor so hard as he represents in the litigation for which he demands compensation in this action.

Under the fifth paragraph the plaintiff says he identified the volume, 46 L. R. A. (N. S.), containing the report alluded to above, and offered it in evidence. The court sustained defendant's objection to the offer. For like reasons as before stated the ruling was correct.

5. It appears that about November 29, 1909, the plaintiff rendered a bill to the defendant for legal services in which there were certain specified items. The plaintiff complains that the court allowed an officer of the defendant testifying as a witness, to state in substance that he called on the plaintiff about that date for a bill for all services to date; that the latter furnished him with the account in question known in this case as Defendant's Exhibit "C"; and that the de-

86 Or.—42

fendant paid it.    The contention of the plaintiff is that
such testimony was a variation of the terms of the bill
so as to make it include items not mentioned therein.
Independent of the matter of accounting alleged in the
answer, and as combating the plaintiff's claim under
the general issue, defendant could show that it re-
quested a statement of plaintiff's entire services to a
certain date and that Exhibit ''C'' was what he gave
in response to the request.    It is in a sense an admis-
sion against the plaintiff's interest enough to take the
question to the jury.

6, 7. In support of its case, the defendant propounded
a long hypothetical question to a member of the bar
who appeared as a witness on its behalf purporting to
cover a large amount of services and called for the
opinion of the witness concerning their value.    The
plaintiff objected to this question on the ground that it
assumed as hypotheses matters concerning which there
was no evidence.    The bill of exceptions, however, does
not state that there was no evidence to support the
specifications of the question.    If there is any evidence
on the point a party has a right to cover it with a hypo-
thetical question although there may be contradictory
testimony; and in the absence of a direct statement in
the bill of exceptions itself that there was no testi-
mony supporting the conditions of the interrogatory
we must presume that the court did its duty in permit-
ting the question to be framed as it was.    This con-
stitutes the seventh exception.

8. In the eighth assignment of error the plaintiff
complains that the court allowed a practicing lawyer of
fourteen years' experience to give his opinion as to
the reasonable value of the services of the plaintiff in
some of the litigation mentioned in his complaint.
The objection seems to be that the witness was not
shown to be qualified in that it is not shown that he

had any knowledge of the nature of the litigation in question. The witness, however, had testified that he knew about the case and was interested in reading the decision and had heard the hypothetical question propounded to the other witnesses. Whether a witness is qualified as an expert is for the court to decide the same as it determines the competency of any other witness as, for instance, whether a child is of sufficient understanding to testify. The weight of the testimony of the expert is for the jury to determine. The bill of exceptions discloses that there was evidence justifying the decision of the court as to the competency of the witness mentioned, hence there was no error in allowing him to testify.

9, 10. In the ninth, tenth, and eleventh exceptions it is complained by the plaintiff that William C. Benbow, one of defendant's witnesses, was allowed to testify that he had been a deputy city attorney, of counsel for the city and was familiar with its litigation against the defendant. He was also asked to enumerate what important cases he had been engaged in for the city. He was then requested to give his opinion about the reasonable value of the services of the plaintiff. He was also allowed to give his judgment as to whether it was necessary for the plaintiff to attend the meetings of the city council and the executive board in the matter involved in the litigation. The connection of the witness with the litigation in question and with others of similar character was proper to be shown by way of preliminary to give the jury some idea of the professional standing of the one about to testify as an expert and his knowledge of the service whose value he was required to estimate. This was enough to let in his opinion. It may be presumed that the jury was probably not fully cognizant of the routine

of business before the city council, so that it was properly within the discretion of the court to take the opinion of a man who knew as a city attorney might, about the necessity of continued attendance at the meetings of that body. Moreover, the answer of the witness to that question concerning the attendance at the meetings of the city council was harmless as against the plaintiff, for he said:

"That would depend altogether on what was taking place there at the meeting. I shouldn't think it would be necessary to attend all the meetings because there were many meetings in which this matter would not be up, but just what steps an active counsel might think was necessary would depend on his diligence and his activity and all those things to protect his client. He might do more than was necessary. He might think it was in order to protect his client."

11. The plaintiff was not harmed by allowing Benbow to testify that it was not the intention of the city to destroy the defendant's plant, that being an assignment under the twelfth exception.

12. Another member of the bar testifying for the defendant declared on cross-examination in substance that $15,000 to $20,000 would be a reasonable fee and besides stated that if the decree granted the defendant the use of the premises as long as they operated a sawmill it would be more valuable than the fee-simple title. The court ordered this additional part of the answer stricken out which was proper as the statement was merely argumentative.

13. In rebuttal, the plaintiff sought, as stated in exception 14, to explain the items in his bill for services known as Exhibit "C," whereupon the court said:

"Why do you wander on that way, Mr. Shepherd, all that has been before the jury. * * I am not going to permit you to go over things again and again."

The plaintiff thereupon claimed the right to explain an item of the exhibit, whereupon the court said:

"Go on and state it; if the jury can stand it I can."

Exception was taken to the language of the court. The witness was allowed to make his explanation, hence the testimony went to the jury as he desired. In purport, his complaint is that the judge was not suave in manner. The utterance may have been somewhat unethical when considered from the standpoint of extreme refinement. Judges, however, are human beings, and as said by Mr. Chief Justice McBride in *Schaller* v. *Pacific Face Brick Co.*, 70 Or. 557, 567 (139 Pac. 913), they

"Are called upon to rule in a moment upon the most delicate questions relating to the admission or rejection of testimony; and for us to weigh their decisions made under such circumstances by the technical rules of logic and law would result in the reversal of half the cases tried by them. We should rather adopt the advice of the poet, 'Be to their faults a little blind, and to their virtues very kind,' and reverse only for such errors as appear to have worked actual injustice."

The general character of the exceptions and the voluminous record sent to this court indicate that generally the plaintiff pursued a very technical course calculated to grate upon the patience both of the court and of opposing counsel; and we cannot be surprised that as late in the trial as the rebuttal testimony a slight expression of impatience should escape from the lips of the presiding judge. If impolite or even erroneous it is not of sufficient importance to justify the disturbance of the verdict.

14. Under the fifteenth assignment the plaintiff complains that he was denied the right to testify in rebuttal of the defendant's testimony about whether Mr.

Poulsen, an officer of the defendant, made more than one employment of the plaintiff. So far as that is concerned the plaintiff's employment and his services were matter for his case in chief. Each party had a right to testify once on his own behalf on the same subject and that is sufficient.

15. Again, under the next head the plaintiff is aggrieved because he was denied the right to show that the defendant was satisfied with the decree in the case of the City of Portland against the defendant. This is wholly immaterial. Under number 17 the plaintiff complains that the court refused to give certain instructions requested by him, but it does not appear from the bill of exceptions but that the court gave the same charge substantially. The instructions given are not contained in the bill of exceptions.

16. In the eighteenth instance the plaintiff objects because the court instructed the jury that if from the testimony they believed there was a settlement and that the defendant paid all that was required of it, the plaintiff was not entitled to recover anything for services from January, 1908, until December, 1909. As already indicated there is testimony quoted in the bill of exceptions to the effect that one of the defendant's officers about November 29th called upon the plaintiff for a bill for his services to that date. In response to this the plaintiff furnished the bill known as Exhibit "C" which the defendant paid about December 2d of that year. This was sufficient to justify the instruction mentioned.

17. Under the nineteenth specification of the bill it is stated:

"Plaintiff also asked the court to interpret the writing, to wit, Defendant's Exhibit 'C,' and not to submit the same to the jury as a matter of fact, and plain-

tiff was granted an exception to the refusal of the court to give the jury the legal effect of said writing and submit the same to the jury on the question of whether the same constituted a settlement of account.''

If the plaintiff had desired a particular instruction relating to the legal effect of the document, he should have framed it and submitted it to the court. Not having done so he cannot complain.

18. The final error assigned is that the court refused to set aside the verdict on account of misconduct of the jury. Some members of that body came forward after the trial and made affidavit to the effect that they had agreed to a quotient verdict and that some members had voted as low as $2,000, that being less than the amount admitted by the defendant. It has been so often decided by this court that, especially in such instances, the affidavits of jurors cannot be received to impeach their verdict that we forbear to repeat the citations.

The plaintiff's appeal is not well taken and the judgment must be affirmed.

AFFIRMED.   REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BENSON and MR. JUSTICE HARRIS concur.