Argued March 27; affirmed June 17; reargued on rehearing October 7; former opinion adhered to November 18; motion to recall mandate and second petition for rehearing denied December 2, 1930.

# HENDRICKS v.
# PORTLAND ELECTRIC POWER CO.

(289 P. 369, 292 P. 1094)

*Cassius R. Peck* of Portland (Griffith, Peck & Coke of Portland on the brief) for appellant.

*Robert F. Maguire* of Portland (Bradley A. Ewers, Louis E. Schmitt, Winter & Maguire and W. H. Maguire of Portland on the brief) for respondent.

BELT, J. This is an action to recover damages for personal injuries alleged to have been sustained as a result of a collision between a street car and an automobile in the city of Portland. In the allegations of the complaint the accident is thus described:

"On June 20, 1927, the plaintiff was operating an automobile in a northerly direction on Second street and approached the intersection thereof with Yamhill street. That at said time numerous vehicles were parked along the east side of Second street next to the curb, and plaintiff was driving said automobile in that portion of the street to the west of said parked vehicles.

"Upon nearing said intersection the plaintiff stopped her automobile to permit pedestrians to safely cross Second street and to safely remain in a safety zone on the east side of Second street at said intersection. After plaintiff had come to said stop and while said automobile and plaintiff's position therein were plainly visible to the defendant, it operated one of its street cars in a northerly direction along Second street, and with great speed, force, and violence drove the same into the rear of the vehicle plaintiff was driving, * * *."

Defendant is charged with negligence as follows:

"1. The defendant failed to have said street car under control so as to be able to stop the same in time to avoid hitting and injuring plaintiff.

"2. Defendant failed to keep a lookout for traffic upon the street and particularly for the automobile in which plaintiff was riding.

"3. Defendant failed to stop said street car when the presence of the automobile in which plaintiff was riding on the street ahead of it was known to it, although there was ample time and opportunity for defendant to have stopped said street car and avoided striking said automobile and injuring this plaintiff."

Plaintiff alleges that, as a result of this negligence, she sustained injuries to her neck and back and that her nervous system was greatly shocked. She avers:

"That she is a woman of a nervous temperament, and said shock and blow greatly exaggerated her nervous condition and so deranged her mental and nervous system that she shortly became insane, from which said insanity she has and does now suffer."

Through her guardian ad litem she asks general damages in the sum of $50,000 and the sum of $25,000 as special damages for loss of earnings and earning power.

The defendant, after denying the negligence charged and the alleged injuries, by answer alleges as an affirmative defense that the collision between the street car and the automobile was due solely to the negligence of the plaintiff in that (1) she stopped or parked her automobile in violation of a city ordinance; (2) she stopped or parked her automobile in such location as prevented free and unobstructed passage of the street car; (3) she failed to yield the right of way to the street car; (4) she failed to maintain a lookout for the approach of the street car; (5) she failed to exercise such reasonable care in the operation of the automobile as would have been expected from an ordinarily prudent driver under the existing circumstances. Defendant company thus alleges its version of the accident:

"That on June 20, 1927, the defendant was lawfully, carefully and prudently operating its street car in a northerly direction upon its railway track between Yamhill and Morrison streets in said city of Portland; that as said street car was being operated as aforesaid, the plaintiff was driving and operating an automobile in a northerly direction alongside said street car and recklessly, carelessly, and negligently, sud-

denly and unexpectedly stopped said automobile in the middle of said block and in such position and location that there was not sufficient clearance between the rear step of said street car and the left fender, left running board and left end of bumper, and by reason of such negligence on the part of the plaintiff in so stopping said automobile, the rear step of said street car scraped upon, along and against the left fender, left running board and left end of bumper of said automobile, but the force of said impact was not sufficient to move said automobile or to in any way or wise injure or damage the plaintiff.''

Verdict and judgment were had in favor of plaintiff in the sum of $18,002.77. Defendant appeals.

The defendant company asserts that the judgment rendered in this case should be set aside for the reason that it is based on a quotient verdict. In support of this contention is the affidavit of one of the attorneys for the defendant that he found in the jury room a sheet of paper showing the following calculation as made by the jurors in arriving at the verdict:

```
                                     18002.77
        30 000                12) 192033.25
        10 000                    12
        30 000                     72
        30 000                     72
        30 000                      033
        30 000                       24
         2 000                        92
        30 000                        84
           33.25                       85
      192 033.25                       84
```

Defendant asserts that a portion of the above figures are in the handwriting of Ethel J. Grubb, forewoman of the jury, and the remainder in that of Rol-

lin B. Dayton who was also a member of the jury. The affiant also states that the calculation of the verdict is in error in that the quotient should be $16,002.77 instead of $18,002.77.

There is also an affidavit signed by each of the 12 jurors that "in arriving at said verdict nine jurors agreed that each would name a sum which he or she would be willing to return as a verdict, and that said sums should then be added together and divided by 12, and that the resulting quotient should be the verdict of the jury." The affidavit of the jurors also sets forth the calculation as above shown. After the making of this affidavit, which was subscribed and sworn to on the 11th day of June, 1929, Ethel J. Grubb made another affidavit on the 18th day of July in which she avers:

"There was no binding agreement or any agreement on the part of the jurors to accept the result of the addition of the figures referred to and their division by 12, as a verdict, and to my knowledge no one so understood it."

On the following day she made a third affidavit in which she stated that the second one was made through inadvertence and mistake and that her first affidavit, wherein the facts averred show a quotient verdict, was correct.

■ It is the well-settled rule in this jurisdiction that affidavits of jurors will not be received to impeach their verdict: *Forrest v. Turlay,* 125 Or. 251 (266 P. 229); *Stafford v. Tonkin,* 124 Or. 534 (264 P. 863); *Wells v. Clark & Wilson Lumber Co.,* 114 Or. 297 (235 P. 283); *Shepherd v. Inman-Poulsen Lumber Co.,* 86 Or. 652 (168 P. 601); *Spain v. O.-W. R. & N. Co.,* 78 Or. 355 (153 P. 470, Ann. Cas. 1917E, 1104). It is equally well established that a quotient verdict is illegal and

constitutes misconduct on the part of jurors for which a new trial may be granted. The mere fact in itself, however, that nine jurors caused to be written on the slip of paper amounts expressing their respective views in the assessment of damages and that the quotient was obtained by dividing the total by 12 does not invalidate the verdict unless there was a prior agreement that such unascertained quotient would be accepted as the verdict of the jury. There is no presumption that the jurors engaged in such an illegal proceeding in arriving at their verdict. It is incumbent upon the person who attacks the verdict to establish that the jurors did have an agreement beforehand that they would abide by the quotient thus obtained. The writer is not unmindful that it is practically impossible to prove a quotient verdict without receiving in evidence the affidavits of the jurors who participated in such illegal proceeding. The argument against the rule as above announced is unanswerable when considered from the viewpoint of the party injured but, as stated in *McDonald v. Pless*, 238 U. S. 264 (59 L. Ed. 1300, 35 S. Ct. 783):

"The argument, however, has not been sufficiently convincing to induce legislatures generally to repeal or to modify the rule. For, while it may often exclude the only possible evidence of misconduct, a change in the rule 'would open the door to the most pernicious arts and tampering with jurors.' 'The practice would be replete with dangerous consequences.' 'It would lead to the grossest fraud and abuse' and 'no verdict would be safe.' "

What has occurred in the instant case, wherein one of the jurors exercised her inalienable right to change her mind, demonstrates the wisdom of the rule.

It is insisted, however, that if we eliminate the affidavits of the jurors the affidavit of one of the coun-

sel for the defendant is sufficient to establish a prima facie case of quotient verdict. The fallacy of this contention is, in our opinion, that the affidavit of Mr. Nelson does not contain the essential element of a pre-arrangement by the jurors to abide by the quotient as their verdict: *Thompson v. City of Lamar* (Mo.), 17 S. W. (2d.) 960; *McMurdock v. Kimberlin,* 23 Mo. App. 523. The legislatures of a few states, apparently recognizing that hardship may result in particular instances by strict adherence to the rule, have enacted statutes to the effect that jurors cannot by affidavit impeach their verdict except to show that it was obtained as the result of lot or chance.

■■■■ Error is predicated upon the refusal of the court to strike certain testimony of the plaintiff given on redirect examination relative to the record of her conviction in the federal court of the crime of operating a still used for the manufacture of intoxicating liquor. Without objection by counsel for defendant plaintiff testified at some length in explanation of the part she played in the commission of the above crime. Her counsel then asked: "Well, who owned it? Who owned the still? They have brought this into the case and now you have a right to protect yourself. Come out with it—who owned that still?" She replied, "I took the ———." Whereupon counsel for defendant interposed an objection to the admission of such testimony and later, after considerable colloquy between the court and counsel, moved "to strike from the record any testimony of this witness with reference to any manner of defense of this action, on the ground that it is incompetent, irrelevant and immaterial." The court, in ruling, said: "The motion will be denied. It was allowed to go in and it is in there now. The motion will be denied." It was clearly improper to receive

any evidence in the nature of a defense or in explanation of the criminal charge: *Formby v. Williams,* 17 Ala. App. 24 (81 So. 360); *Coles v. McNamara,* 136 Wash. 624 (241 P. 1); *State v. Evans,* 145 Wash. 4 (258 P. 845); *Harper v. State,* 106 Ohio St. 481 (140 N. E. 364). The court was no longer concerned with the question of the guilt or innocence of the party, as such had already been adjudicated. The record of conviction was relevant only to the credibility of the witness. In the absence of timely objection to the testimony, defendant is not in a position to urge error for failure of the court to allow its motion to strike such evidence, although it would have been far better had the court not permitted it to remain for the consideration of the jury: *Derrick v. Portland Eye, etc., Hospital,* 105 Or. 90 (209 P. 344); 26 R. C. L. 1056.

■■ Defendant takes exception to the giving of the following instruction:

"You are instructed that if you shall find from the evidence that the automobile in which plaintiff was riding was struck by the car of the defendant corporation after the defendant corporation had notice, or by exercise of due care, should have had notice that the automobile of the plaintiff was in a position of danger in time to have avoided a collision, then said corporation and its servants were negligent in overtaking and striking said automobile."

The mere striking of the automobile by the street car would not of itself constitute negligence. In the above instruction, the jury was advised that, if the street car struck the automobile after the motorman knew or ought to have known that it was in a position of danger, negligence would thereby be established. Such is not the law. It was the duty of the motorman to exercise due care to observe vehicles upon the street

and after having so observed them to use due care to avoid collision. As stated in the instruction in *Davidson v. City Railway,* 170 Iowa 467 (153 N. W. 79, Ann. Cas. 1917C, 1226), upon which respondent relies:

"It was the duty of defendant's employees, in charge of said car, to exercise ordinary care to determine whether or not plaintiff's auto truck was in a place of danger, and to avoid the injury thereto."

The instruction in question is erroneous in that it eliminates entirely the degree of care to be exercised by the street car company after observing that the automobile was in a position of danger. There is no contention that the doctrine of last clear chance applies.

We think it was also error to give the following requested instruction:

"I instruct you that it is the duty of the defendant corporation and its servants operating its street cars to observe and see vehicles upon the streets of the city of Portland proceeding in the same direction in the path of or stopped in the path of the streetcar from any time when the vehicles come into their range of vision."

It was the duty of the defendant in the operating of its street cars to exercise only reasonable care in maintaining a lookout for vehicles on the streets of the city of Portland. It is not an insurer against accident. However, in other parts of the charge it was made clear to the jury that it was incumbent upon the defendant only to exercise due care to observe the automobile in which plaintiff was riding, and, after having known of its presence, to exercise ordinary care in bringing the street car to a stop, thereby avoiding injury.

■ Under such circumstances the court cannot consistently reverse this case notwithstanding the two instructions above quoted are subject to criticism. A careful study of the entire charge has been made and we find that the issues were clearly and fairly submitted to the jury. We see no error in other assignments relative to instructions.

■ In view of the slight damage done to the automobile and the inconsequential bruises, if any, to the plaintiff, we quite agree with counsel for defendant that it is highly improbable that this collision was the proximate cause of plaintiff's insanity. Dr. Griffith, who was first assistant physician of the Oregon state hospital for the insane, diagnosed her case as a "chronic type of alcoholic psychosis." There was other expert testimony, however, that plaintiff's mental derangement was caused by this collision between the street car and the automobile. Needless to say, this court cannot substitute its judgment for that of the jury upon a question of fact.

It follows that the judgment must be affirmed.

COSHOW, C. J., and BEAN and BROWN, JJ., concur.

---

Former opinion adhered to on rehearing November 18, 1930.

ON REHEARING

(292 P. 1094)

KELLY, J. This case was heard in department number two and the judgment of the lower court affirmed in an opinion handed down June 17, 1930. A petition therefor having been filed by appellant and

a rehearing having been ordered, oral arguments thereupon were presented to the court sitting in banc.

■ In the original opinion it was decided that the errors now urged, because of certain parts of the court's instructions, were rendered innocuous by a careful and correct statement of the law by the learned trial judge in other parts of his charge. A painstaking examination of the entire record confirms us in the justice and wisdom of this holding.

The writer of this opinion thinks that it is only the comparatively large amount of the verdict which justifies the very serious and extended consideration that has been given to the final disposition of this case. He also realizes, however, that, except in most unusual and extraordinary instances, such as to indicate the influence of prejudice or passion upon the trial jury, this court should not disturb a verdict; and certainly not when based upon a record, such as this, where the unsuccessful party fully presented its testimony and voluntarily waived argument before the jury upon the facts.

To ascribe an order of reversal to an erroneous portion of the lower court's instructions, which in other parts thereof the court corrected, when in point of fact the impelling reason for such an order, if made, must be that the verdict seems to be very large, would be intellectually dishonest, ethically indefensible, and expressly forbidden by constitutional mandate. We adhere to the former opinion.

Judgment affirmed.