HUTCHINSON, ADMX., APPELLANT, *v.* LAUGHLIN, JR., APPELLEE.

(No. 22138—Decided May 28, 1951.)

*Mr. Fred H. Mandel,* for appellant.
*Messrs. McKeehan, Merrick, Arter & Stewart,* for appellee.

THOMPSON, J.  This cause comes to this court on appeal on questions of law from the Common Pleas Court.  The action in the Common Pleas Court was for malpractice, as a result of which it was claimed that plaintiff's decedent met his death.  The case was tried to a jury of twelve, commencing on Friday, September 22, 1950.  Defendant rested his case on September 27, 1950.  Arguments to the jury were made on September 29, 1950, and a verdict was returned that day in favor of the defendant.  The verdict was signed by the minimum number required in a civil case, namely, nine of the twelve jurors.  One of the nine jurors who signed the verdict was the foreman of the jury.

Within ten days after the verdict and judgment, the plaintiff filed a motion for new trial on the grounds of

misconduct of the jury and irregularity in the proceedings of the court and jury. An oral hearing before the trial judge was had on the motion for new trial. At that hearing counsel for plaintiff summoned the foreman of the jury and two of the three members of the jury who had failed to sign the verdict, for the purpose of establishing misconduct of the jury and irregularity in the proceedings.

Upon examination by counsel for plaintiff, the first of the jurors who had failed to sign the verdict testified as follows with respect to the foreman's actions in the jury room during the deliberations of the jury:

"To the best of my recollection, we had a first vote—I don't know whether I am justified in bringing that out here or not—Mr. Vosburgh did bring up the question—he said, 'I am sort of an astrologist,' he said, 'I am a bug on this,' and he said, 'I have consulted an astrologist with the date and the birth and the time that the deceased was brought to the hospital to be operated on.' And he says, 'According to the stars,' or the moon—I just don't recollect the exact words he used, he said, 'the doctor had two strikes against him in operating at that time on the man.' He did say, 'I don't want this to impress you fellows with your thought, but,' he said, 'it is just one of those things,' he says, 'that I believe in.'

"Q. And how soon after he made those statements was the vote taken to sign the verdict? A. Oh, I would say in the neighborhood of ten or fifteen minutes."

The second juror interrogated by counsel for plaintiff testified to actions of the foreman during the deliberation of the jury, as follows:

"A. Well, this I suppose, happens in all jury rooms; he told of experiences, or talked about things, particularly of his own experience, and he mentioned that he believed in astrology, or words to that effect; and he

didn't want it in any way to influence any one or anything; and he would like, or discussed it a little bit and told about how he had done a little research on how it would affect the doctor, and how the different dates of birth and dates of the operation, how they would have involved the doctor, or how they might have influenced him, if he had been a believer of astrology; and he just discussed it a little bit that way; just made a little talk in which we all listened and that was all.''

The foreman, himself, when examined by plaintiff, testified:

''A. * * * in the further discussion, as foreman of the jury, I called for all the discussion that we could get; I said, 'We want every one to express themselves in any way, with any information that they feel might have a bearing upon the case. Anything can be helpful.' And then I said, 'Now, there is something from my own standpoint, that you can take it or—only for what value it may be to you. You can call me a crackpot or anything that you want, but I have some experience and observation upon which I can base the facts that I am about to enumerate,' and I mentioned the fact that I had delved somewhat into the study of astrology, from the standpoint, at least, of the medical, the standpoint of operations, that is, their fundamentals, to this effect: That you must never touch that part of the body with a knife, if the moon is in the sign that rules that part of the body. Now, that is an old axiom of the medical profession, going back to Hippocrates. And I took occasion after I had been drawn into this case just to satisfy myself, I took occasion to look up the planetary conditions which prevailed in that respect, at the time of this operation, and I found that the conditions there were very adverse. In other words, a doctor—and many doctors do observe the astrological conditions. I can tell you of

cases right here in Cleveland, of leading surgeons that have called competent astrologers to get information before going ahead with operations; so that there are those that put a great deal of importance upon this. And no doctor that observes the astrological conditions at the time would have considered that a good time for an operation of that particular nature. And I based it, not from the standpoint to in any way influence the jurors—I said, 'This is only an observation that I have made, based upon my particular knowledge and investigation in that field, and that you should take it for only such value as it may have to you.'

"Q. Yes, I understand. Well, as a result of this research that you have made, Mr. Vosburgh, did that determine your verdict in this case? A. Absolutely not.

"Q. What significance did that research have to you? A. It was only an amplification, a further confirmation of other facts in the case.
"* * *

"Q. And you had made this research or study, you say, within a day or so after you started the case? A. Yes. Yes, at the time after I had been drawn in the case, I was on the jury and I had learned the facts of the case. To satisfy myself I looked it up, and no mention had ever been made of that fact until we were in the jury room and had progressed as far as we had."

Upon cross-examination, the foreman testified that he was influenced by the evidence in the case, and that, if he had not possessed what he had considered additional valuable information bearing upon the case, his own thought would still have been the same. Subsequently, after re-cross-examination of the foreman, the court interrogated this witness as follows:

"The court: In your study of astrology, supposing

the doctor had performed the operation on a date that was right, astrologically speaking, do you think the operation would have had a better chance of being successful than on another date.

"The witness: Well, obviously, the operation might have had a better chance of being successful, but, of course, even then it wouldn't be a guarantee.

"The court: You know that people have died as a result of an operation even though they were operated on on dates of astrological correctness?

"The witness: Yes. Yes, I had a secretary that worked right up until the date she went into the hospital for a certain type of operation, perfectly healthy, nothing wrong with her—she never left the hospital, and as we discovered later, the operation was performed at the wrong time.

"The court: You mean astrologically?

"The witness: Yes.

"The court: Do you think she would have lived if it had been performed at the right time?

"The witness: It would be my opinion that she would."

At the conclusion of the testimony, the court permitted counsel to file briefs on the matter of a new trial, based on the testimony. Subsequently, the court overruled the motion for a new trial.

Counsel for plaintiff has appealed on questions of law to this court. A bill of exceptions was filed, setting forth the testimony offered upon the motion for a new trial, but none of the evidence adduced at the original trial was included. The only assignments of error for this court to consider are whether there was misconduct of the jury, or irregularity of proceedings sufficient to have required a new trial.

It will be observed that the question for decision is whether the jury's verdict in this case can be im-

peached, under any circumstances, by evidence obtained from members of the jury only, or whether the facts in this case are sufficiently extraordinary so that this court should hold that there was such misconduct of the jury as to warrant a new trial, and whether there was an abuse of discretion by the trial court in refusing to grant a new trial.

This court has examined the various authorities cited by counsel in this case. The general principle, long established and accepted at common law from the time of the English case of *Vaise* v. *Delaval*, 1 T. R., 11 (K. B.), 99 Eng. Rep. R., 944, decided by Lord Mansfield in 1785, has been that the verdict of the jury may not be impeached by the testimony or affidavits of a member or members of the jury rendering the verdict, unless there is evidence aliunde impeaching the verdict.

In 8 Wigmore on Evidence (3 Ed.), Section 2354, the authorities in support of this proposition are collected and the author points out that this principle has been very generally accepted. The author refers to only four or five states which have departed therefrom. Wigmore declares that "in Ohio there is some doubt" as to acceptance of the general principle, but the learned author does not, even in his 1949 pocket supplement, cite any recent Ohio cases nor does he address himself to any of the more recent decisions which, in our opinion, leave no doubt as to the law in this state as announced by the Supreme Court of Ohio, and followed in numerous decisions. We shall not attempt to cite all the Ohio cases, but we believe the principle involved is so important that we desire to call attention to some of the more recent pronouncements which appear to us to make the law in Ohio abundantly clear.

In the case of *Schwindt* v. *Graeff* (1924), 109 Ohio

St., 404, 142 N. E., 736, the Supreme Court held that the rule, that the verdict of a jury may not be impeached by evidence of a member of the jury, is a common-law rule founded upon public policy. The fact that a juror offering such impeaching evidence does not join in the verdict does not except such evidence from the operation of the rule. The court in its syllabus declared that the legislature, and not the courts, is empowered to modify or abrogate the rule. In that case, an affidavit of one of the jurors alleged that at a time when the jury was divided 8 to 4, a juror, who was one of the four, stated he was going to toss a coin and if the figure of the head was on top he would continue to vote as before in favor of plaintiffs and if the coin fell with the other side up he would change his vote and vote in favor of the defendants. He then flipped the coin and it fell with the head up. When the next ballot was taken the vote remained the same. Subsequently the same juror laid down three quarters, stating that if two of the three heads were up he would change his vote and vote with the majority, and if two were otherwise he would continue to vote as before. According to the affidavit, two heads were up, and, on taking the next ballot, the defendants received one more vote which gave them nine votes, a sufficient number to authorize the return of a verdict in favor of the defendants. Such verdict was then returned, signed by the nine jurors, including the one who had flipped a coin. The affidavit was thereafter presented in support of a motion for a new trial. The motion was overruled and judgment entered on the verdict. Error was prosecuted to the Court of Appeals, which affirmed the judgment of the Common Pleas Court. Error having been prosecuted to the Supreme Court of Ohio, the latter court decreed it to be public policy that the deliberations and conduct of the jury while in the jury room should not be the

subject of judicial investigation upon the evidence of the jurors alone. The court declared that the particular case before it presented a situation which strained the rule almost to the breaking point, but added that so long as we are to continue to be governed by laws, rather than by men, a rule must be adhered to which is designed to accomplish justice in the greatest number of cases. It is true that a dissenting opinion in that case by two judges indicated disagreement with the opinion of the court, but later cases in Ohio have accepted that case and have expressed the belief that the principle should be adhered to. In that case, the conduct of one of the jurors signing the verdict was glaringly improper for he appears to have substituted for his own views the rules of chance, but the court felt the principle of sanctity of jury deliberations required protection.

In the case of *Emmert* v. *State,* 127 Ohio St., 235, 187 N. E., 862, 90 A. L. R., 242, Judge Bevis, rendering the opinion of the court, declared that the rule that jurors' testimony alone cannot be received to show misconduct of jurors in the jury room has persisted for more than three-quarters of a century, and he pointed out that the courts have adhered to the rule on grounds of public policy, fearing that the abrogation of the rule would entail consequences worse than does its enforcement. The *Emmert case* recognized one exception to the general rule, permitting affidavits or testimony of jurors to prove unlawful communications made to members of the jury by court officers or others outside the jury room but during the period of the jury's deliberations. In that case, the Supreme Court reversed the judgment of the Court of Appeals which had affirmed the judgment of the trial court, the trial judge upon motion for new trial having refused to hear evidence of jurors indicating that the bailiffs in

charge of the jury had had unlawful communication with some of its members. That case supports the principle that the testimony of jurors shall not be used to impeach the verdict unless there is evidence aliunde as to misconduct.

Our difficulty in the instant case is in finding that there was any evidence aliunde establishing misconduct of the jurors. No testimony was offered except that of the jurors themselves. The testimony in this case as to the conduct of the foreman gives us concern. But we are not prepared to say that we will upset the wise principle that the verdict of a jury may not be impeached by testimony of the jurors unless there is evidence aliunde as to misconduct.

In the present case, it may be pointed out that no evidence was offered by the two jurors, who refused to sign the verdict, that any of the members of the panel were influenced by the foreman's beliefs in astrology, and the foreman's own testimony as to the effect of his independent investigation was merely an amplification or ''a further confirmation of other facts in the case.''

We have given careful thought to the question whether the independent investigation on the part of the foreman as to the planetary conditions, which was apparently conducted outside the jury room, could, under any circumstances, be considered the evidence aliunde sufficient to take this case out of the rule. We do not believe, at least in the absence of corroborating testimony of persons outside the jury as to any such independent investigation, that this could be so considered, much as we disapprove of the thought of the possibility of jurors making independent research or investigation during a trial to supplement testimony before them. In this connection, however, we find almost this precise situation occurring in the most recent

pronouncement of the Supreme Court of Ohio which has come to our attention. In the case of *Wicker* v. *City of Cleveland,* 150 Ohio St., 434, 83 N. E. (2d), 56, which was an appeal from the Court of Appeals of this district, the plaintiff had sued in the Municipal Court of Cleveland to recover damages for injuries she claimed to have sustained when she alighted from a streetcar and stepped into a hole in the pavement in a safety zone maintained by the city of Cleveland. A unanimous verdict was rendered for the city by a jury of six. Upon motion for new trial, error was alleged on the ground of misconduct on the part of one member of the jury. It appeared that one of the women on the jury, during the pendency of the trial, visited the scene of the accident, which was within a block or two of the courthouse, and reported to the other jurors that there was no hole in the pavement. The trial court overruled the motion for new trial and held the testimony of the juror inadmissible to impeach the verdict of the jury, in the absence of evidence aliunde as to what had taken place in the jury room.

The Supreme Court of Ohio, affirming the judgments of the trial court and the Court of Appeals, declared as follows:

"This question has been before this court in numerous cases, and the decisions are summarized as follows in 39 Ohio Jurisprudence, 1110, Sections 382 and 384:

" 'It is a long established and a generally accepted doctrine, founded upon the ''wisest reasons,'' of public policy, rather than upon any doctrine of estoppel, that the verdict of a jury may not be impeached by the testimony or affidavits of a member or members of the jury rendering the verdict, unless there is evidence aliunde impeaching the verdict.'

" * * *

" 'The policy of the law forbidding the impeach-

ment of the verdict by affidavits of the juror is particularly exemplified when the attempt is to prove misconduct of the jurors while engaged in their deliberation, or for the purpose of showing improper motives or fraudulent or improper conduct of members of the jury.' ''

We wholly agree with the analysis of the so-called juror's privilege and the exceptions thereto recognized by Mr. Justice Cardozo in *Clark* v. *United States,* 289 U. S., 1, 77 L. Ed., 993, 53 S. Ct., 465, a case cited by counsel for appellant. That decision concerned the question of privilege in a criminal prosecution of a juror for contempt (1) for false representations and concealment on *voir dire,* and (2), after being seated as a juror, for deliberately impeding other members of a jury and preventing a verdict. Instead of being a case in which the court recognized the right to impeach a jury verdict by testimony of a juror, that case involved facts in which no verdict was ever reached and the decision is therefore not germane to the precise question here before us.

In reaching our conclusion in the instant case, we reaffirm the wisdom of the rule against impeachment of the verdict of a jury by testimony of one of its members, unless corrobating testimony is produced from sources other than the deliberations in the jury room. This time-hallowed rule of common law is founded in common sense which should have strong present appeal. If we were to disregard this traditional principle or to undermine it by successive or progressive exceptions, we should be contributing to the undermining rather than the strengthening of our jury system, which, despite its occasional demonstrations of human frailties, remains one of the bulwarks of protection for free men today. Jurors, after completion of their duties at the courthouse, would be increasingly impor-

tuned and harrassed in their homes after their deliberations were terminated and, instead of acceptance being the usual sequel to a verdict, visitation of jurors would tend to become the necessary practice of diligent counsel. Jurors would likewise be placed on the defensive because of their casual opinions and hampered in their free discussion in the jury room. The obtaining of public-spirited citizens to serve as jurors would become more difficult than at the present time.

In stating these beliefs we wish to add that counsel in the present case have been most helpful to the court. We cannot approve, and we in no way wish to countenance, the conduct of experiments or independent investigations by jurors during the course of their deliberations, for they are required in the case before them to obtain their facts from the sworn testimony of witnesses and their law from the trial judge.

It is unfortunate that in the application of any general rule there are inevitably individual cases such as this one in which the rule may appear harsh.

In affirming the judgment of the trial court, we base our decision on the more recent cases decided by the Supreme Court of Ohio, which we have referred to and which appear to us to be thoroughly sound.

The judgment of the Common Pleas is affirmed.

*Judgment affirmed.*

SKEEL, P. J., and HURD, J., concur.