Argued March 6, affirmed May 16, 1962

# STATE OF OREGON *v.* GARDNER
371 P. 2d 558

*Marvin E. Hansen,* Eugene, argued the cause for appellant. With him on the briefs were Johnson, Johnson & Harrang, Eugene.

*John W. Osburn,* Deputy District Attorney, Eugene, argued the cause for respondent. With him on the brief was William F. Frye, District Attorney for Lane County.

Before McALLISTER, Chief Justice, and WARNER, SLOAN and O'CONNELL, Justices.

O'CONNELL, J.

Defendant appeals from a judgment of conviction for the crime of entering a motor vehicle with the intent to steal. The appeal is based upon the alleged error of the trial court in refusing to grant a new trial which was requested on the ground that the misconduct of a juror during the jury's deliberation resulted in an unfair trial.

Zachary Gilpin, the state's principal witness, testified that he saw the defendant remove automobile tires from the back of a pick-up truck. He described

in detail the circumstances under which the tires were stolen. This testimony was contradicted by defendant and two other witnesses called by him. During the course of the trial and in the jury room when the jury was deliberating, juror Charmalee Schram commented upon the credibility of witness Gilpin. Defendant produced the affidavits of two members of the jury which, in substance, stated that juror Schram had stated that she was acquainted with witness Gilpin, that he was a truthful boy and that anyone who would make a statement contrary to that made by Gilpin would not be telling the truth. Juror Schram also made the statement that "They certainly have cleaned up the Gardner boy [defendant]. He has a haircut and a job." Defendant moved for a new trial contending that the foregoing statements made by juror Schram constituted misconduct which resulted in depriving defendant of a fair trial. The motion was denied and defendant has appealed from the judgment of conviction.

We have repeatedly said that affivadits of jurors as to what occurred during their deliberations will not be received to impeach their verdict.[1] We have,

---

[1] State v. Gordon, 208 Or 455, 302 P2d 214 (1956) (while in jury room one juror stated that the defendant had been convicted of a similar crime in California); State of Oregon v. Imlah, 204 Or 43, 281 P2d 973 (1955) (juror's affivadit indicated that he concurred in the verdict only because of "pressure" from the other jurors); State v. Morrow, 158 Or 412, 75 P2d 737, 76 P2d 971 (1938) (osteopath-juror stated that it was her professional opinion that defendant was father of a child in prosecution for statutory rape); Winters v. Bisaillon, 152 Or 578, 54 P2d 1169 (1936) (jurors' affidavits indicated that jury had disregarded instructions given by the trial judge); Schmalz v. Arnwine, 118 Or 300, 246 P 718 (1926) (juror's affidavit showing computation of the amount of the total verdict broken down into the amount which the jury allocated for each item); State v. Ausplund, 86 Or 121, 167 P 1019 (1917), rehearing denied 87 Or 649, 171 P 395 (1918) (in trial for manslaughter committed while producing an

however, held that a verdict may be impeached by affidavits that a juror made an unauthorized inspection of the premises involved in the action.[2] In some of the latter cases the affidavits not only described the juror's misconduct outside of the jury room (i.e., in viewing the premises), but also his misconduct in communicating to other jurors during the course of their deliberations his observations relating to the premises.[3] Affidavits have also been received in other cases.[4]

abortion, juror's affidavit indicated that one juror had told other juror that defendant had performed criminal abortions on previous occasions); Hinkel v. Oregon Chair Co., 80 Or 404, 156 P 438, 157 P 789 (1916) (affidavit disclosed statements made by one juror with reference to a former injury of plaintiff); State v. Smith, 43 Or 109, 71 P 973 (1903) (juror's affidavit indicated his verdict resulted from a feeling that if he delayed the proceedings further the delay would have dangerous effects upon another juror whom he considered seriously ill). In the following cases jurors' affidavits indicated a quotient verdict: Fuller v. Blanc, 160 Or 50, 77 P2d 440, 83 P2d 434 (1938); Hendricks v. P. E. P. Co., 134 Or 366, 289 P 369, 292 P 1094 (1930); Stafford v. Tonkin et al, 124 Or 534, 264 P 863 (1928); Shepherd v. Inman-Poulsen Lumber Co., 86 Or 652, 168 P 601 (1917); Spain v. Oregon-Washington R. & N. Co., 78 Or 355, 153 P 470 (1915); Cline v. Broy, 1 Or 89 (1854).

[2] Thomas v. Dad's Root Beer, Etc., 225 Or 166, 356 P2d 418, 357 P2d 418 (1960); Eckel v. Breeze, 221 Or 572, 352 P2d 460 (1960); Saunders v. Williams & Co., 155 Or 1, 62 P2d 260 (1936); Schneider v. Moe, 151 Or 353, 50 P2d 577 (1935); Frank v. Matthiesen, 115 Or 349, 236 P 754 (1925). But see, State v. McKiel, 122 Or 505, 259 P 917 (1927).

[3] Eckel v. Breeze, 221 Or 572, 352 P2d 460 (1960); Saunders v. Williams & Co., 155 Or 1, 62 P2d 260 (1936).

[4] Hooton v. Jarman Chevrolet Co., 135 Or 269, 293 P 604, 296 P 36 (1931) (court received juror's affidavit showing that his verdict had been influenced by the fact that he knew defendant carried insurance); Martin v. Oregon Stages, Inc., 129 Or 435, 277 P 291 (1929) (court received jurors' affivadits indicating that jurors had discussed the merits of the case before the case had been submitted to them for determination); Mount v. Welsh et al., 118 Or 568, 247 P 815 (1926) (court received juror's affidavit indicating that he found for plaintiff in order to get through with the case).

■ It is seen then, that there is no absolute rule in this state prohibiting the use of a juror's affidavit to impeach a verdict; the affidavit may be considered but its significance in determining whether a new trial will be ordered is for the court to decide in each case. In each case the court must choose between two conflicting interests; on one hand the interest of the individual who claims that the misconduct deprived him of a fair trial, and on the other hand the interest of the public in protecting the verdict from attack. The choice is described in *Kollert v. Cundiff,* 50 Cal2d 768, 773, 329 P 2d 897, 900 (1958), as follows:

"* * * The problem involves the balancing of two conflicting policies. It is, of course, necessary to prevent instability of verdicts, fraud, and harassment of jurors, and, on the other hand, it is desirable to give the losing party relief from wrongful conduct by the jury."[9]

■ Since, after weighing these competing interests, we do in fact permit a verdict to be impeached under some circumstances, it is better that we dispense with the "consecrated rubric" that a juror may not impeach his verdict and that we state the rule in its accurate form by declaring that a verdict is impeachable if

---

[9] A similar observation is made in McDonald v. Pless, 238 US 264 at 267, 35 S Ct 783, 59 L Ed 1300 (1915): "* * * The rule is based upon controlling considerations of a public policy which in these cases chooses the lesser of two evils. When the affidavit of a juror, as to the misconduct of himself or the other members of the jury, is made the basis of a motion for a new trial the court must choose between redressing the injury of the private litigant and inflicting the public injury which would result if jurors were permitted to testify as to what had happened in the jury room." Cf., Clark v. United States, 289 US 1, 13-14, 53 S Ct 465, 469, 77 L Ed 993, 999-1000 (1932) (juror held in contempt of court for giving false information on voir dire examination).

justice demands that it be set aside.[9] In doing so we need not depart from the view taken in *State of Oregon v. Imlah,* 204 Or 43, 54-55, 281 P2d 973 (1955) that verdicts should not be set aside except in those cases of "utmost gravity and importance" where it is "manifest that enforcement of the rule would violate 'the plainest principles of justice' (*McDonald v. Pless,* 238 US 264, 269, 55 S Ct 783, 59 L Ed 1300 [1915])."[7]

■ The principal reasons for strictly limiting the use of evidence of a juror's misconduct are set out in the *Imlah* case. The overriding consideration is the necessity of giving finality to litigation.[8] If verdicts could be readily set aside there would be an open invitation to disappointed litigants and their counsel to contest the verdict. The invitation would carry in its wake the temptation to tamper with jurors and it would

[9] The reference to the "consecrated rubric" is from Judge Learned Hand's opinion in Jorgensen v. York Ice Machinery Corporation, 160 F2d 432, 435 (2d Cir 1947), where it is said: "* * * The two decisions of the Supreme Court which we have cited, as well as its approach in United States v. Reid [12 How 361, 366, 13 L Ed 1023] and Hyde v. United States [225 US 347, 383, 32 S Ct 793, 56 L Ed 1114, Ann Cas 1914A, 614], suggest it as not improbable that when the question arises in the future, the testimony of the jurors may be held competent, and that we shall no longer hear that they may not 'impeach their verdict,' when it is 'impeachable' if what they say is true. Maybe not; judges again and again repeat the consecrated rubric which has so confused the subject; it offers an easy escape from embarrassing choices."

[7] In McDonald v. Pless, 238 US 264, 268-269, 35 S Ct 783, 59 L Ed 1300 (1915), the court recognizes that "there might be instances in which such testimony of the juror could not be excluded without 'violating the plainest principles of justice.'" See also, United States v. Grieco, 261 F2d 414 (2d Cir 1958); Moore v. Missouri K. & T. Ry., 30 Tex Civ App 266, 69 SW 997 (1902).

[8] "To allow an issue to be made in a motion for a new trial upon affidavits of the jurors * * * would detract from the sanctity of a verdict, and renders it uncertain and of little value." Wood & Kinkaid v. Gulf, C. & S. F. Ry. Co., 15 Tex Civ App 322, 326-27, 40 SW 24, 26 (1897).

open the way for pressures and fraudulent practices to induce members of the jury to repudiate their decisions.[9] We wish to emphasize therefore, that although we recognize that evidence of a juror's misconduct may be used, the verdict will stand unless the evidence clearly establishes that the misconduct constitutes a serious violation of the juror's duty and deprives complainant of a fair trial. There is no way of stating the principle in more definite form; the limits must be set on a case-by-case basis.[10]

■■ One limitation can definitely be set. The limitation is best expressed in Rule 41 of the Uniform Rules of Evidence, as follows:

"Upon an inquiry as to the validity of a verdict or an indictment no evidence shall be received to show the effect of any statement, conduct, event

---

[9] McDonald v. Pless, 238 US 264, 35 S Ct 783, 59 L Ed 1300 (1915) (permit disappointed litigants to harass jurors); Norton v. Kickingbottom, 212 Ark 581, 206 SW2d 777 (1947) (would decrease security and permit impairment of verdicts); Ralston v. Dossey, 289 Ky 40, 157 SW2d 739 (1942) (might lead to mischievous and pernicious operations on judicial procedure); Caldwell v. E. F. Spears & Sons, 186 Ky 64, 216 SW 83 (1919) (undermines finality of verdict); People v. Pizzino, 313 Mich 97, 20 NW2d 824 (1945) (will encourage vacillation of jurors and post verdict tampering); Hutchinson v. Laughlin, 90 Ohio App 5, 102 NE2d 875 (1951) (prevents harassment of jurors which would make jurors even more difficult to obtain); Schwindt v. Graeff, 109 Ohio St 404, 142 NE 736 (1924) (the rule prohibiting impeachment accomplishes justice in the greatest number of cases); Skaggs v. Gypsy Oil Co., 169 Okla 209, 36 P2d 865 (1934) (prevents both litigants and the public from invading the jury room); Keith v. State, 7 Okla Cr 156, 123 P 172 (1912) (prevents subsequent outside influences from inducing jurors to change their verdict).

[10] "[I]t would not be safe to lay down any inflexible rule because there might be instances in which such testimony of the juror could not be excluded without 'violating the plainest principle of justice.' This might occur in the gravest and most important cases * * *." McDonald v. Pless, 238 US 264, 268-69, 35 S Ct 783, 785, 59 L Ed 1300, 1302-03 (1915). See also, State of Oregon v. Imlah, 204 Or 43, 54, 55, 281 P2d 973, 979 (1955).

or condition upon the mind of a juror as influencing him to assent to or dissent from the verdict or indictment or concerning the mental processes by which it was determined." Handbook of the National Conference of Commissioners on Uniform State Laws, p. 188 (1953).[⑩]

The burden is upon the complainant to show by clear and convincing evidence that he was deprived of a fair trial as a result of the misconduct.[⑪]

■ The question before us is, then, whether juror Schram's misconduct was of such a serious nature as to deprive defendant of a fair trial. A comparison of the misconduct in this case with that involved in other adjudicated cases where verdicts have been attacked will afford some basis for judgment. In our own cases we have sustained verdicts where the juror's misconduct was of a serious character.[⑫] Cases from

[⑩] See also, Model Code of Evidence, Rule 301 (1942).

[⑪] Walton v. Wild Goose Mining & Trading Co., 123 F 209 (9th Cir 1903); Sanders v. Beckwith, 79 Ariz 67, 283 P2d 235 (1955); Swanson v. Fort Worth Transit Co., 209 SW2d 772 (Tex App 1948); Woodhouse v. Woodhouse, 99 Vt 91, 130 A 758 (1925). However, where the misconduct consists of a juror's unauthorized viewing of the premises the rule has become established in this state that a new trial will be ordered "unless it is clear that the misconduct could not have influenced the verdict." Wolfe v. Union Pacific Railroad Company, 74 Or Adv Sh 245, 247, 368 P2d 622, 624 (1962). Thomas v. Dad's Root Beer, Etc., 225 Or 166, 356 P2d 418 (1960); Eckel v. Breeze, 221 Or 572, 352 P2d 460 (1960); Saunders v. Williams & Co., 155 Or 1, 62 P2d 260 (1936); Schneider v. Moe, 151 Or 353, 50 P2d 577 (1935); Frank v. Matthiesen, 115 Or 349, 236 P 754 (1925). But see, State v. McKiel, 122 Or 505, 259 P 917 (1927).

[⑫] State v. Gordon, 208 Or 455, 302 P2d 214 (1956) (while in jury room one juror stated that defendant had been convicted of a similar crime in California); State v. Morrow, 158 Or 412, 75 P2d 737, 76 P2d 971 (1938) (in statutory rape prosecution juror-osteopath stated that it was her opinion that defendant was the father of complainant's child); State v. Ausplund, 86 Or 121, 167 P 1019 (1917), rehearing denied 87 Or 649, 161 P 395 (1918) (in trial for manslaughter committed while producing an abortion juror stated that defendant had performed criminal abortions

other jurisdictions tend, for the most part, to reflect this same judicial attitude of keeping within narrow limits the type of conduct which will warrant disturbing the verdict.[49]

The fact that juror Schram was acquainted with witness Gilpin and was convinced of his honesty cer-

on previous occasions); State v. Smith, 43 Or 109, 71 P 973 (1903) (juror's affidavit indicated that his verdict resulted solely from a feeling that if he delayed longer this delay would have serious effects upon another juror whom he considered dangerously ill).

[49] Northern Pacific Railway Co. v. Mely, 219 F2d 199 (9th Cir 1954) (the court refused to consider affidavits of ten jurors stating that their verdict had resulted from improper arguments by other jurors as to a non-existent rule of the defendant railroad); Brackin v. State, 31 Ala App 228, 14 So2d 383 (1943) (affidavits not received to show jury had discussed defendant's prior criminal record which had not been presented in trial); People v. Long, 15 Cal2d 590, 103 P2d 969 (1940) (affidavits not received to show that jurors had been influenced by a newspaper article read during their deliberation); Davis v. Kansas City Public Service Co., 223 SW2d 1 (Mo 1949), noted in 3 Baylor L Rev 109 (1950) (court refused to credit testimony of jurors indicating that their verdict had been influenced by another juror who had obtained information on stopping speeds from a library); In re Hall's Will, 252 NC 70, 113 SE2d 1 (1960) (jurors' affidavits not received to show that one juror had read aloud a definition of undue influence from an encyclopedia); Willis v. Davis, 333 P2d 311 (Okla 1958) (court rejected juror's affidavit stating one of the jurors who was familiar with the case had stated that plaintiff's crops had been damaged by weather and not by cattle); Johnston v. Sound Transfer Co., 53 Wash2d 630, 335 P2d 598 (1959) (jurors' affidavits not received to show that their verdict was influenced by personal experiences in horseback riding related by another juror). See also, 8 Wigmore, Evidence § 2349 (McNaughton rev ed 1961); Annotation, 30 ALR2d 914 (1953).

A less strict rule is applied in some jurisdictions. Kirkpatrick v. Wickwire, 138 Kan 230, 25 P2d 371 (1933) (jurors' affidavits which tended to show a quotient verdict were admitted); State v. Kociolek, 20 NJ 92, 118 A2d 812 (1955) (juror's affidavit received to show that jurors had discussed the fact that defendant had been charged with a similar crime); Maryland Casualty Co. v. Hearks, 144 Tex 317, 190 SW2d 62 (1945) (jurors' testimony received to determine whether a juror who had special knowledge had influenced the other jurors). See 8 Wigmore, Evidence § 2354 (McNaughton rev ed 1961); Annotation, 67 ALR 1523 (1930); Annotation, 20 ALR 1187 (1922).

tainly did not constitute grounds for setting aside the verdict. In many, if not in most, of the communities in this and other states jurors frequently listen to witnesses known to them and concerning whom they have formed opinions, favorable or unfavorable. In the smaller communities it would be virtually impossible to draw a jury entirely free from the various influences which grow out of the jurors' knowledge and appraisal of the parties or their witnesses. The jury is not such a delicate instrument of justice that it can be expected to function only when wholly free from these influences.

In the present case Mrs. Schram's evaluation of Gilpin's credibility was communicated to the other jurors. This she should not have done. But we do not regard this misconduct as a violation of "the plainest principles of justice," adopting the test stated in State of *Oregon v. Imlah,* supra and *McDonald v. Pless,* supra. Since jurors are instructed that they are the judges of the credibility of witnesses it is reasonable to assume that they will exchange their opinions as to the credibility of particular witnesses. The expression by one juror of the strong conviction that a witness was telling the truth was, after all, only a statement of one juror's opinion supported by nothing more than that juror's impression formed through an acquaintance with the witness. But for that acquaintance, each of the jurors had the same opportunity to observe Gilpin on the stand and to form an opinion as to his credibility. It is not, then, as if the only source of the jurors' judgment was found in Mrs. Schram's communication of her opinion.

We are of the opinion that defendant received a fair trial. The judgment must, therefore, be affirmed.

MCALLISTER, C. J., concurs in the result.