Argued and submitted November 19, 1993; resubmitted In Banc December 15, 1994, affirmed March 22, petition for review allowed August 22, 1995 (321 Or 512)

Frederic M. FAVERTY,
*Respondent,*

*v.*

McDONALD'S RESTAURANTS
OF OREGON, INC.,
an Oregon corporation,
*Appellant.*

(9001-00394; CA A70327)

892 P2d 703

In Banc*

---

* Warren, J., not participating.

I. Franklin Hunsaker argued the cause for appellant. With him on the briefs were Donald C. McClain, McClain & Rayburn, Douglas G. Houser and Bullivant, Houser, Bailey, Pendergrass & Hoffman.

Robert J. Neuberger argued the cause for respondent. With him on the brief were Robert K. Udziela and Pozzi, Wilson, Atchison, O'Leary & Conboy.

Jeffrey V. Hill, Bradford H. Lamb, Zarosinski & Hill, James M. Coleman and Power & Coleman filed a brief *amicus curiae* for National Council of Chain Restaurants.

Joseph S. Ruggie, Jr., Keith P. Spiller, Michael N. Chesney, Thompson, Hine and Flory, M. Elizabeth Duncan and Foley & Duncan, P.C. filed a brief *amicus curiae* for Defense Research Institute, Inc.

Kathryn H. Clarke and Alfredo Wheelock, III, filed a brief *amicus curiae* for Oregon Trial Lawyers Association.

LANDAU, J.

Edmonds, J., dissenting.

## LANDAU, J.

Defendant appeals from a judgment on a jury verdict awarding damages to plaintiff for injuries he suffered when his van was struck by a car driven by defendant's off-duty employee, Matt Theurer. Plaintiff's theory is that defendant was negligent in working Theurer unreasonably long hours, knowing that he would then be a hazard to himself and others when he drove himself home from the work place. Defendant assigns error to the trial court's denial of several motions, to its overruling of an exception to one of plaintiff's jury instructions and to its refusal to allow the jury to compute the percentage of fault attributable to Theurer. We affirm.

We state the facts in the light most favorable to plaintiff, who prevailed at trial. *Dikeman v. Carla Properties, Ltd.*, 127 Or App 53, 62, 871 P2d 474 (1994). Theurer was an 18-year-old high school senior. He participated in numerous extracurricular activities, and he was a member of the National Guard. He also worked part time at one of defendant's fast food restaurants. He was known to be an enthusiastic worker, but his family and friends believed that he was trying to do too much and was not getting enough sleep.

At the time of the accident, defendant had many employees who attended high school during the day and worked part time in the evenings. Defendant's restaurant closed at 11 p.m., and cleanup and closing procedures sometimes continued past midnight. Defendant's managers generally tried to accommodate employee scheduling requests, but that was not always possible. However, defendant had a policy of not scheduling high school students to work later than midnight more than once per week. The employee manual said that employees also were not to be scheduled for split shifts. According to one of defendant's managers, that was because employees did not like having to commute for split shifts, and they were to be avoided "so people can get their rest." Notwithstanding defendant's efforts, employees still sometimes complained about being tired after closing, and defendant was aware that at least two of its employees had automobile accidents as a result of falling asleep while driving home after working late shifts.

A few times each year, defendant would schedule special cleanup projects to be performed after midnight, while the restaurant was closed. Employees other than high school students usually would be scheduled to perform that work. One of defendant's managers testified that, if student workers were needed, such projects could be scheduled for weekends or during spring break. However, due to the untimely dismissal of another employee, one of defendant's managers asked for a volunteer to fill in for the cleanup shift that was scheduled from midnight to 5 a.m. on a Tuesday. Theurer offered to work the extra shift. The manager knew that Theurer drove approximately 20 miles to and from work.

During the week before the special cleanup project, Theurer worked five nights. One of those nights, he worked past midnight, one—the night before the cleanup project—until 11:30 p.m., one until 11 p.m. and two until approximately 9 p.m.

On Monday, April 4, 1988, Theurer worked his regular shift from 3:30 p.m. to 7:30 p.m., followed by the cleanup shift beginning at midnight and ending on Tuesday, April 5, at about 5:00 a.m. After the cleanup project was completed, Theurer worked yet another shift from 5:00 a.m. to 8:21 a.m. During that shift, Theurer told the manager that he was tired and asked to be excused from his next regularly scheduled shift so that he could rest. The manager agreed.

Theurer then began the trip home. A short time later, he became drowsy or fell asleep while driving his car approximately 45 miles per hour on a two-lane highway. At a bend in the road, his car crossed the dividing line into the lane of oncoming traffic and crashed into plaintiff's van. Theurer died, and plaintiff was severely injured.

Plaintiff settled his potential claims against Theurer's representatives. Plaintiff then filed this action, alleging that defendant was negligent in requiring Theurer to work too many hours without adequate rest, and in permitting Theurer to drive a car when defendant should have known that Theurer could not drive safely. Defendant moved to dismiss the complaint, on the ground that the allegations do not support the conclusion that plaintiff's injuries were a reasonably foreseeable consequence of defendant's conduct,

as a matter of law. The trial court denied the motion. Defendant then answered, denying any negligence. Defendant asserted two affirmative defenses. In the first, defendant alleged that plaintiff's injuries were caused by his own negligence. In the second affirmative defense, defendant alleged that plaintiff's injuries were caused by the negligence of Theurer and, accordingly, any negligence of defendant must be determined in comparison with that of both plaintiff and Theurer. Plaintiff moved to dismiss the second affirmative defense on the ground that the jury is not entitled to consider the relative fault of parties who have settled and are not before the court. The trial court granted the motion.

The case was then tried to a jury. During the trial, plaintiff amended his complaint, so that the sole allegation of negligence is that

> "[d]efendant was negligent in working Theurer more hours than was reasonable under the circumstances when defendant knew, or in the exercise of reasonable care should have known, that Theurer would operate a motor vehicle and be a hazard to himself and to others."

Defendant moved for a directed verdict, arguing that the evidence could not support a verdict that plaintiff's injuries were a reasonably foreseeable consequence of defendant's decision to allow Theurer to work the hours that he did. Defendant also asserted that plaintiff's claim fails as a matter of law, because state labor laws have preempted any common law liability concerning the scheduling of workers, and there is no evidence of violations of those statutes. The trial court denied the motion. The jury was instructed, in relevant part:

> "Now, ladies and gentlemen, in general it is the duty of every person in our society to use reasonable care to avoid damage that would be reasonably anticipated. Reasonable care is that care which persons of ordinary prudence exercise in the management of their own affairs to avoid injury to themselves or to others.
>
> "Common law negligence, therefore, is the doing of some act that a reasonably careful person would not do or it's the failure to do something that a reasonably careful person would do under the same or similar circumstances. The care exercised should be in keeping with dangers apparent or reasonably foreseeable at the time and place in question and not in the light of resulting sequence of events or hindsight.

"A person is liable only for the reasonably foreseeable consequences of his, her, or its actions. There are two things that must be foreseeable. First, the plaintiff must be within the general class of persons that one reasonably would anticipate might be threatened by the defendant's conduct; second, the harm suffered must be within the general class of harms that one reasonably would anticipate might result in the defendant's conduct. It is not necessary that a party foresee either the precise injury or the exact manner of its occurrence."

The jury then returned a verdict in favor of plaintiff, finding that plaintiff was not negligent at all.

Defendant appealed. Approximately three months after the filing of the notice of appeal, a magazine article reported that at least one of the jurors in this case said that the jury increased its award by $100,000 after someone speculated that plaintiff would have to pay a lawyer one-third of his damages for a contingent fee. Defendant moved for a new trial, arguing that the article constituted evidence of jury misconduct. The trial court denied the motion.

In its first assignment of error, defendant contends that the trial court should have granted defendant's motion to dismiss plaintiff's complaint. In its second assignment of error, defendant contends that the trial court should have granted defendant's motion for a direct verdict. In support of both assignments, defendant argues that it cannot be held liable to plaintiff as a matter of law, because it had no duty to prevent Theurer from working as many hours as he did. According to defendant, as Theurer's employer, it had no duty to limit Theurer's work schedule, both because employers have no such duty at common law and because state labor statutes have preempted the field. Plaintiff argues that, under *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987), the defendant's liability in negligence generally depends on whether the defendant's conduct unreasonably created a foreseeable risk of harm to the plaintiff. That, plaintiff contends, is a question of fact for the jury to decide. According to plaintiff, defendant's status as an employer does not entitle it to any limitations on that general duty, and the state's labor statutes do not impose any limitations on that duty either.

In reviewing the denial of a motion for a directed verdict, we view the evidence in the light most favorable to the nonmoving party, extending to that party the benefit of every reasonable inference that may be drawn from the evidence. *Shockey v. City of Portland*, 313 Or 414, 422-23, 837 P2d 505 (1992), *cert den* ___ US ___, 113 S Ct 1813 (1993). In reviewing the denial of a motion to dismiss following trial on the merits, we apply the same standard of review. *See Scholes v. Sipco Services & Marine, Inc.*, 103 Or App 503, 506, 798 P2d 694 (1990). Therefore, we consider together defendant's first two assignments of error.

The necessary starting point for any discussion of the sufficiency of the evidence in a negligence case is the Supreme Court's decision in *Fazzolari*. In that case, the court held that

> "unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff. The role of the court is what it ordinarily is in cases involving the evaluation of particular situations under broad and imprecise standards: to determine whether upon the facts alleged or the evidence presented no reasonable fact-finder could decide one or more elements of liability for one or the other party." 303 Or at 17.

Defendant and the dissent argue that the foregoing test was recently overruled in *Buchler v. Oregon Corrections Div.*, 316 Or 499, 853 P2d 798 (1993). We find no such holding in *Buchler*. To the contrary, the court quoted from and applied the two-step analysis just quoted.[1] *Three members* of

---

[1] The dissent argues that

> "The holding of *Buchler* is that the 'facilitation' of the risk of harm in terms of foreseeability is not enough by itself to get a common law negilgence case to the jury." 133 Or App at 540.

There is, however, no such language in *Buchler*. What *Buchler does* say is that

> "mere 'facilitation' of an unintended adverse result, *where intervening intentional criminality of another person is the harm-producing force*, does not cause the harm so as to support liability for it." 316 Or at 511-12. (Emphasis supplied.)

We note that there is neither allegation nor evidence of any "intervening intentional criminality of another person" in this case. The dissent's analysis of the sufficiency

the court suggested that *Fazzolari* simply ought to be over-ruled. However, the majority of the court expressly declined to do that. Accordingly, at least until one more vote emerges on the Supreme Court to overrule *Fazzolari*, we are constrained to apply it. That is, in fact, the manner in which this court has routinely and consistently analyzed negligence cases, even since the Supreme Court's decision in *Buchler*. *See, e.g., Slogowski v. Lyness*, 131 Or App 213, 217, 884 P2d 566 (1994); *McAlpine v. Multnomah County*, 131 Or App 136, 141, 883 P2d 869 (1994), *rev den* 320 Or 507 (1995); *Zavalas v. Dept. of Corrections*, 124 Or App 166, 171, 861 P2d 1026 (1993), *rev den* 319 Or 150 (1994). We proceed, therefore, with our application of the principles of law articulated in *Fazzolari*.

■ Defendant argues that it was Theurer's employer and, because of that relationship, it was subject to a limited duty to both Theurer and plaintiff, as a matter of law. Defendant relies on *Restatement (Second) of Torts* §§ 315 and 317 (1965). Section 315 provides that:

> "There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> "(a)  a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> "(b)  a special relation exists between the actor and the other which gives to the other a right to protection."

Section 317 states one special relationship that gives rise to an exception to that general rule:

> "A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>
> "(a)  the servant
>
> "(i)  is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

---

of the evidence, therefore, proceeds from a false premise, and we need proceed no further in our discussion of it.

"(ii)    is using the chattel of the master, and

"(b)    the master

"(i)    knows or has reason to know that he has the ability to control his servant, and

"(ii)    knows or should know of the necessity and opportunity for exercising such control."

Defendant argues that, because the evidence shows that the accident that caused plaintiff's injuries occurred off defendant's premises and did not involve the use of its chattels, the exception to the general rule that is described in section 317 does not apply and, therefore, it is entitled to rely on the general rule of nonliability for the conduct of others that is stated in section 315 of the *Restatement (Second) of Torts*.

The linchpin of defendant's argument is section 315, which states a general rule of nonliability for failing to control the conduct of third persons. It applies to all persons, unless a special relation gives rise to a duty to control the conduct of the third person. By demonstrating that the special relation exception does not apply in this case, defendant asserts that it is entitled to rely on the general rule of nonliability stated in section 315. The linchpin, however, will not support the weight of defendant's argument.

Accepting, for the sake of argument, that section 317 does not apply,[2] defendant is not entitled to limit its duty to plaintiff by invoking section 315. The limitation of section 315 does not arise out of any particular status, relationship or statutory standard of conduct. It is a standard that, according to the *Restatement (Second) of Torts*, applies to all persons. However, under *Fazzolari*, unless a defendant invokes a special status or relationship, or is subject to a particular statutory standard of conduct, it is subject to the general duty to avoid conduct that unreasonably creates a foreseeable risk of harm to a plaintiff. *Fazzolari*, 303 Or at 17; *see also Fuhrer v. Gearhart By The Sea, Inc.*, 306 Or 434, 438, 760 P2d 874 (1988).

---

[2] In fact, it does not apply, although for reasons different than the ones defendant asserts. Section 317 concerns the duty of an employer to control an employee's conduct "while acting outside the scope of his employment." In this case, plaintiff alleges that defendant was negligent in scheduling him to work too many hours *on the job*.

Defendant argues that, if section 315 of the *Restatement (Second) of Torts* does not limit its duties to plaintiff, the state's labor statutes clearly do. According to defendant, ORS 652.010 "has declared the public policy of this state as to the number of hours that an employee shall be permitted to work," and plaintiff has not pleaded a violation of that statute. Similarly, defendant asserts that ORS 653.261 authorizes the Commissioner of the Bureau of Labor and Industries to prescribe maximum hours of employment, and that plaintiff again has failed to plead a violation of that statute or any regulations promulgated thereunder. We disagree.

■ To begin with, ORS 652.010 does not prescribe any particular number of hours that an employer may require its employees to work. It merely states:

"It is the public policy of this state that no person shall be hired, nor permitted to work for wages, under any conditions or terms, for longer hours or days of service than is consistent with the person's health and physical well-being * * *." ORS 652.010(1).

Moreover, the statute does not apply to the operation of restaurants. By its terms, it applies only to the operation of "any mill, factory or manufacturing establishment." ORS 652.010(2).[3]

■ Defendant's reliance on ORS 653.261 is equally unavailing. That section does not establish any maximum number of hours of work. It merely authorizes the Commissioner of the Bureau of Labor and Industries to do so. In addition, ORS 653.261 and the regulations promulgated thereunder relate to the protection of workers, not to the protection of the general public from the consequences of a worker's conduct. *See Zavalas*, 124 Or App at 171.[4]

---

[3] Defendant's argument is especially difficult to understand in the light of the fact that it took precisely the opposite position at trial. Plaintiff's complaint originally alleged a violation of ORS 652.010. Defendant moved to dismiss that claim, arguing that the statute "does not apply to the operation of a restaurant."

[4] Once again, defendant's argument that plaintiff should have alleged and proven a violation of the statute is at odds with the position it took at trial, where it moved to dismiss plaintiff's allegation that it had violated ORS 653.261, because chapter 653 "relate[s] to the protection of workers and not the possible effects of workers on third parties outside the course and scope of an employee's work relation."

■ Defendant argues that, even if it is subject to the general standard of *Fazzolari*, the evidence in this case was insufficient to allow the court to send it to the jury. According to defendant, there is no evidence that it knew or should have known that Theurer was so exhausted or fatigued that it should have foreseen that working him three shifts in one 24-hour period would create a foreseeable risk of harm to motorists such as plaintiff. Plaintiff argues that defendant failed to preserve that argument and that, in any event, the evidence is sufficient to support the trial court's ruling.

We do not agree with plaintiff that defendant failed to preserve the argument. Defendant argued below that

"[t]here has been no * * * evidence of [defendant's] having any knowledge of impairment on the part of Matt Theurer, nor has there been proof that [defendant] should have known that Theurer had an impairment based upon the facts that have been introduced."

The argument was preserved.

We do agree, however, that the evidence was sufficient to support the trial court's ruling. In *Donaca v. Curry Co.*, 303 Or 30, 38, 734 P2d 1339 (1987), decided the same day as *Fazzolari*, the Supreme Court said that "in an extreme case a court can decide that no reasonable factfinder could find the risk foreseeable * * *." This is not such an extreme case. There is evidence that defendant controlled all work assignments. Therefore, defendant knew or had reason to know of the number of hours Theurer had been working. There also is evidence that defendant ordinarily did not use high school students to work after midnight, and when it did, it tried to limit that late shift to once a week. Defendant also had a policy of not working its employees two shifts in one day. According to at least one of defendant's managers, those policies were adopted and enforced out of concern that employees not become overly tired on the job. In fact, defendant was aware that at least two of its employees had recently had automobile accidents as a result of falling asleep while driving home after working late shifts.[5] There is evidence

---

[5] In that regard, the facts of this case recall those in *Fazzolari* itself. In *Fazzolari*, the plaintiff sued the defendant school district for injuries resulting from her assault and rape on school grounds. The plaintiff alleged that the defendant was negligent in, among other things, failing to provide proper security on school grounds

that, during and after his late-night shift, Theurer was visibly fatigued, and that defendant's managers were on site and saw Theurer throughout that shift. It is undisputed that defendant knew that Theurer was a high school student, and that most of the high school students who worked there drove to work in their own cars. On the basis of that evidence, a reasonable jury could conclude that defendant knew or should have known that working Theurer so many hours would impair his ability to drive home safely.

Defendant and the dissent insist that, because Theurer "volunteered" to work so many hours, the evidence simply is insufficient to establish defendant's negligence, as a matter of law. First of all, in so characterizing the facts, defendant and the dissent put a "spin" on the evidence to which they are not entitled. *Shockey*, 313 Or at 422-23. The evidence, taken in the light most favorable to plaintiff, shows that Theurer did not, out of the blue, volunteer to take three shifts in one 24-hour period. Defendant affirmatively asked him to work those hours. Moreover, the evidence shows that defendant — not its employees — generally controlled all work assignments and that defendant penalized its employees for not working as assigned.

Second, even indulging the assumption that Theurer volunteered for his all-night shift, the evidence still is sufficient to support the jury's verdict. Defendant's managers knew that Theurer already had been scheduled to work more than its own policies permitted. Moreover, they saw him in a visibly fatigued state and continued to work him as scheduled. In that regard, defendant was much like a bartender who served alcoholic beverages to a visibly intoxicated person who then caused an automobile accident that harmed

---

and failing to warn students of the possibility of such attacks on school grounds. In support of that allegation, the plaintiff introduced evidence that a woman had been sexually assaulted on the school grounds only 15 days before the attack on the plaintiff, and that other kinds of attacks had previously occurred on the school grounds as well. The trial court directed a verdict in favor of the defendant, but the Supreme Court reversed, holding that "[i]t would not be wholly unreasonable for a factfinder to conclude" that the evidence of those prior assaults was sufficient to support a verdict of negligence. 303 Or at 22. Similarly, in this case it was not wholly unreasonable for the jury to conclude that, because of the evidence of prior accidents resulting from working employees too many late-night hours, defendant should not have worked Theurer so many hours that he became an addition to the list of accidents.

another. No one required the intoxicated person to have the extra drink. He or she asked for the drink and "volunteered" to pay for it. Nevertheless, the courts have held that, because the bartender saw the driver in a visibly intoxicated state, and it is reasonably foreseeable that the customer will drive when he or she leaves, the bartender is liable for the consequences of the automobile accident. *Campbell v. Carpenter*, 279 Or 237, 243-44, 566 P2d 893 (1977).

Finally, defendant itself conceded at trial that, if it had allowed Theurer to "volunteer" to work around the clock three full days, the

> "court can almost say as a matter of law, allowing someone to work that long without any rest or sleep might very well constitute affirmative misconduct by an employer, but [it] may be a matter of degrees * * *."

Thus, whether Theurer volunteered or not simply is not the point. The point is whether, as plaintiff alleged in his complaint, defendant "was negligent in working Theurer more hours than was reasonable." That is, as defendant said at trial, "a matter of degrees." In other words, it is a matter for the jury to decide, not for the court to resolve as a matter of law.

Defendant, the dissent and *amici curiae* the National Council of Chain Restaurants and the Defense Research Institute, Inc., implore us to reverse the trial court's judgment on the public policy ground that the result is "patently unreasonable," "shocking," "farfetched" and "goes beyond the common-sense application of tort law." However, that argument was not made to the trial court, and we will not consider it for the first time on appeal.[6] Our function is to

---

[6] Defendant's counsel stated these grounds for defendant's motion for a directed verdict:

"[Counsel]: Your Honor, at this time the defendant, McDonald's of Oregon, Inc., moves for the dismissal of this case and directed verdict and also for a judgment on the pleadings on these grounds: The first ground is that the complaint as amended fails to state a claim. One basis for that is there are not facts alleged in the present complaint that support the contention that this accident and result was reasonably foreseeable. We contend that the pleading is a conclusion and that the plaintiff has the obligation to allege facts which support foreseeability.

"Secondly, we move on the basis of failure to state a claim on the grounds that he has not alleged facts which support that McDonald's took some

determine whether the trial court made an error of law about issues actually raised below and properly assigned as error on appeal. *Ailes v. Portland Meadows, Inc.*, 118 Or App 517, 848 P2d 138, *rev den* 318 Or 24 (1993).

In its third assignment of error, defendant argues that the trial court incorrectly instructed the jury on the elements of plaintiff's negligence claim. According to defendant, the instruction was faulty in that it was based on the general duty to avoid conduct that unreasonably creates a foreseeable risk of harm, instead of the more limited duties that it contends apply under the *Restatement (Second) of Torts* and the state's labor statutes. We will reverse the trial court only if we conclude that the jury instruction it delivered probably created an erroneous impression of the law in the minds of the jurors, which affected the outcome of the case. *Waterway Terminals v. P.S. Lord*, 256 Or 361, 370, 474 P2d 309 (1970). Defendant's arguments in support of its third assignment are essentially the same as those asserted in support of the previous two. For the reasons already stated, we again reject those arguments. The trial court did not err.

---

affirmative action which led to Mr. Theurer driving his vehicle on that morning. We contend that the bare allegation of foreseeability is not the law in Oregon, that the law in Oregon—that restatement 317 through 319 requires that the employer or the party defendant make some affirmative act so that its conduct —that affirmative act will lead to the act or to the loss that they're seeking compensation for.

"Thirdly, we contend that there's been a failure of proof, and move to dismiss or for a directed verdict. There has been no evidence of work within the course and scope of employment nor has there been any proof of—no proof of evidence of McDonald's having any knowledge of impairment on the part of Matt Theurer, nor has there been proof that McDonald's should have known that Matt had an impairment based upon facts that have been introduced.

"Lastly, we move to dismiss and a directed verdict on the basis that the hours of work in this state are controlled by statute and administrative rule and that these statutes and administrative rules have preempted the common law in this area, and that there is in this case no proof of any violation of the statute."

Nowhere did counsel assert that a verdict in plaintiff's favor would violate public policy.

The dissent relies on a statement by defendant's counsel that the public policy of this state is that defendant "didn't have any duty to watch out for [Theurer] after he left work." However, the dissent fails to note that counsel's remark was made in response to questions by the court concerning defendant's argument that the state's labor laws provide the exclusive and preemptive statement of public policy concerning hours of work. The discussion had nothing to do with the arguments the dissent now asserts.

■    In its fourth assignment of error, defendant contends that the trial court should have granted defendant's motion for a new trial. Defendant argues that the magazine article that reported the possibility that the jury increased its award to cover plaintiff's attorney fees was "clear evidence of actual jury misconduct * * *." In reviewing the denial of a motion for a new trial based on juror misconduct,

> "we generally defer to the discretion of the trial court[,] * * * because the trial judge is usually in a better position to evaluate the circumstances of each case and the prejudicial effect, if any, of any claimed irregularity." *Moore v. Adams*, 273 Or 576, 579, 542 P2d 490 (1975). (Citations omitted.)

The Supreme Court elaborated on that standard of review in *Blanton v. Union Pacific Railroad Co.*, 289 Or 617, 616 P2d 477 (1980). In that case, one of the jurors wrote a letter to the trial judge, suggesting that the jury may have reached a quotient verdict.[7] The trial judge declined to grant a motion for a new trial on the basis of the juror's letter. The Supreme Court affirmed, and explained its decision as follows:

> "While jurors' affidavits are receivable in evidence in the sense that the trial court should permit them to be filed, affidavits which disclose nothing more than oral misconduct during the jury's deliberations cannot impeach a verdict. In order to make plain the meaning of the rule, we will restate it: The affidavit of a juror concerning utterances of other jurors during the deliberations or at any other material time cannot warrant the impeachment of a verdict. The kind of misconduct of a juror that will be considered in an attack upon a verdict by a juror's affidavit * * * is misconduct that amounts to fraud, bribery, forcible coercion or any other obstruction of justice that would subject the offender to a criminal prosecution therefor." 289 Or at 630-31. *See also Ertsgaard v. Beard*, 310 Or 486, 497, 800 P2d 759 (1990).

In this case, the information on which defendant based its motion was insufficient to impeach the jury's verdict. As in *Blanton*, the magazine article suggests that one or more jurors may have engaged in "oral misconduct." There is

---

[7] A "quotient verdict" is one that is arrived at by having each juror write down an award to which he or she believes the prevailing party is entitled, and then dividing the sum of all the jurors' awards by the number of jurors. *See Black's Law Dictionary*, 1130 (5th ed 1979). Quotient verdicts are invalid and constitute grounds for a mistrial. *Hendricks v. P.E.P. Co.*, 134 Or 366, 371-72, 289 P 369 (1930).

no evidence of fraud, bribery, forcible coercion or any other criminal obstruction of justice. Thus, the trial court did not err in denying defendant's motion for a new trial.

■     Finally, defendant assigns error to the trial court's dismissal of defendant's second affirmative defense, which alleged that defendant's fault, if any, should have been "compared to that of plaintiff and Matthew Theurer * * *." Defendant argues that, under ORS 18.485(3), if it is found to be less than 15 percent at fault for economic damages, its liability for economic damages is several only. It argues that, because the purpose of that provision is to prevent tortfeasors who are minimally at fault from being held liable for more than their fair "portion of the wrong committed," failing to allow comparison with all tortfeasors is contrary to that statute. Plaintiff argues that the language of the statute and its context clearly demonstrate that the comparison of fault involves only *parties* to the action, and not to other tortfeasors, such as Theurer, whose liability was not at issue at trial.

We begin with an examination of the text and context of the statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). In examining the text and context, we apply relevant rules of construction, such as the rule that words of common meaning are generally assumed to have that common meaning. 317 Or at 611. We also consider, as part of the statute's context, other provisions of the same statute and other statutes relating to the same subject. 317 Or at 611-12. In addition, we consider prior judicial construction of relevant statutory provisions. *Mathel v. Josephine County*, 319 Or 235, 239-40, 875 P2d 455 (1994).

ORS 18.485(3) provides:

> "The liability of a defendant who is found to be less than 15 percent at fault for the economic damages awarded the plaintiff shall be several only."

That provision is part of a series of statutory provisions relating to comparative negligence. Beginning with ORS 18.470, the comparative negligence statute provides that contributory negligence does not bar a plaintiff's recovery

> "if the fault attributable to the person seeking recovery was not greater than the combined fault of the person or persons against whom recovery is sought * * *." ORS 18.470.

The statute then provides that, when comparative fault is at issue, a party may request the jury to answer special questions about that issue, specifically:

"(a) The amount of damages to which a party seeking recovery would be entitled, assuming that party not to be at fault;

"(b) The degree of each party's fault expressed as a percentage of the total fault attributable to all parties represented in the action." ORS 18.480.

Finally, the statute establishes specific rules concerning the liability of joint tortfeasors. It provides first that, with respect to noneconomic damages,

"[i]n any civil action arising out of bodily injury, death or property damage, including claims for emotional injury or distress, loss of care, comfort, companionship and society, and loss of consortium, the liability of each defendant for noneconomic damages awarded to plaintiff shall be several only and shall not be joint." ORS 18.485(2).

In each of those provisions, the legislature referred to the comparative fault of *parties* to a lawsuit, not to "potential parties" or to "potentially liable persons." That language lends substantial support for plaintiff's argument that the fault of nonparties is not to be considered under ORS 18.485(3).

In fact, that is precisely the construction that the Supreme Court has given the parallel language of ORS 18.470 and ORS 18.480. In *Mills v. Brown*, 303 Or 223, 735 P2d 603 (1987), the plaintiff was injured in a three-vehicle automobile accident. He settled with one of the other two drivers and sued the other. When the case was submitted to the jury, it was not permitted to consider the fault of the tortfeasor with whom the plaintiff had settled. Judgment ultimately was entered in favor of the defendant, because of the jury's verdict concerning the proportion of the plaintiff's comparative fault. The plaintiff appealed, arguing that, under ORS 18.470, his fault should have been compared to that of both of the other drivers. The Supreme Court disagreed, holding that ORS 18.470 refers only to actual parties to the lawsuit:

"We interpret that statute as addressing itself only to those persons against whom recovery is sought when the case is submitted to the trier of fact for comparison of fault. *The*

*statutory scheme of comparative fault restricts the jury or judge, as the fact-finder, to consideration only of the fault of the parties before the court at the time the case is submitted to the fact-finder for a verdict or decision.*" 303 Or at 226. (Emphasis supplied.)

In reaching that conclusion, the court looked to the text of ORS 18.470, which refers to "person or persons against whom recovery is sought," as well as the related reference to the comparative fault of "parties" and "all parties represented in the action" in ORS 18.480. In the light of *Mills*, we are hard pressed to find support for defendant's argument that the trial court erred in failing to require the jury to compare the fault of Theurer and defendant.

Defendant insists that the language of ORS 18.470 and ORS 18.480 is irrelevant, because those provisions do not concern joint and several liability *among defendants*. For that reason, they also argue that *Mills* is inapposite. We are unpersuaded.

Defendant's argument is contrary to the method of statutory analysis required by *PGE v. Bureau of Labor and Industries*, 317 Or at 611-12, which includes an examination of surrounding and related statutes. Moreover, adopting defendant's reasoning leads to the anomalous result of requiring juries to consider the fault of nonparty tortfeasors when determining a plaintiff's comparative fault, but not a defendant's comparative fault. Nothing in the language of ORS 18.485(3) or any other statute suggests that the legislature intended that result when it enacted the comparative fault statute.

Defendant contends that the legislature's purpose in enacting ORS 18.485(3) was, in fact, to cause "a fundamental change in the law of Oregon," designed to give potential "deep pocket" defendants special protection from being targeted by plaintiffs who settle with all other tortfeasors. In support of that argument, defendant refers to portions of the legislative history of ORS 18.485(3).

First, resort to legislative history is not necessary in this case, where the text and the context are dispositive. *PGE v. Bureau of Labor and Industries*, 317 Or at 611-12. Second, even assuming the text and context are not dispositive, we

find nothing in the legislative history that demonstrates that the legislature intended even to address the comparative fault of nonparties, much less establish a rule that the fault of such persons must be taken into account.[8] In that regard, it is noteworthy that, although the *Mills* decision was issued during the legislative session in which ORS 18.485 was enacted, there is no mention in any of the legislative hearings or debates concerning the court's decision or the issue it decided.[9] Third, even if there were evidence in those hearings or debates that the legislature intended to address that issue, the fact remains that, in enacting ORS 18.485(3), it did not address that issue. Inchoate intentions are not law, only those intentions that are manifested in language that is enacted. If the legislature did not address a matter in such enacted language, we are not free to insert it. ORS 174.010; *PGE v. Bureau of Labor and Industries*, 317 Or at 611-12. The trial court did not err in dismissing defendant's second affirmative defense.

Affirmed.

**EDMONDS J.,** dissenting.

The majority holds that a restaurant can be held liable for common law negligence because its adult employee fell asleep while driving home from work, crossed the center line into the oncoming lane of traffic and collided with plaintiff's vehicle. The reason for the restaurant's liability: It accepted the employee's offer to work overtime, and, according to the majority, thereby became responsible for the risk of injury caused by the employee's state of fatigue. That holding is without precedent in the State of Oregon. It makes all

---

[8] The legislative history reveals that the principal focus of the debate on what became ORS 18.485(3) was the possible elimination of joint and several liability. The debate produced a compromise, which eliminated joint and several liability when a defendant is found to be less than 15 percent at fault. *See* Minutes, Senate Judiciary Committee, March 3, 1987, pp. 6-7. The subject of nonparty liability was not discussed. The legislative history does contain repeated references to the allocation of fault between "defendants" and "parties," which, if anything, suggests that the legislature did not intend to require that the fault of nonparties be included under ORS 18.485(3). *See* Minutes, Joint Interim Task Force on Liability Insurance, September 16, 1986, p. 5; Minutes, Senate Judiciary Committee, February 5, 1987, pp. 4-5; Minutes, Senate Judiciary Committee, March 3, 1987, pp. 5-7; Minutes, House Judiciary Committee, May 20, 1987, pp. 8-11.

[9] The *Mills* case had been argued and submitted March 4, 1987. The Supreme Court issued its decision April 14, 1987.

employers potentially liable for their employees' off-premises negligence when an employee becomes tired as a result of working. That has never been the law in Oregon nor should it be now.

The majority need have gone no further than defendant's motion for a directed verdict in deciding this case. Defendant is entitled to a directed verdict as a matter of law because of certain uncontroverted facts.[1] First, Theurer was not a minor, but an adult at the time of the accident. He was 18 years old and serving in the National Guard. Defendant did not owe any special responsibility to him because he also attended high school. See ORS 109.510. The fact that he was a student working part time and had over-extended himself physically is of no import to defendant's liability. No rule of negligence requires an employer to inquire into the private lives of its adult employees to determine if, on a given occasion, the employee is not getting enough sleep.

Second, Theurer volunteered to work the clean-up shift. He was not sought out by defendant and "required" to work on April 5, 1988. Several days before April 5, defendant's manager encountered a problem. He had a special shift scheduled to work on the early morning hours of April 5. One of the persons who had been scheduled for the shift had been suspended for disciplinary reasons. Originally, Theurer was not scheduled to work on that shift. A member of the management team talked to 10 or 11 employees, including Theurer, and asked if there was a "volunteer" who could fill the vacancy on the shift caused by the suspension. His inquiry was not directed to any particular person. There is *no* evidence that any employee, including Theurer, was pressured in any way to work the shift. Theurer volunteered to work the shift. The manager in charge of scheduling noticed that

---

[1] The majority says that I have put a "spin" on the evidence to which defendant is not entitled because plaintiff is entitled to every reasonable inference that may be drawn from the evidence. 133 Or App at 526. I don't quarrel with the proposition of law that it relies on, and I have diligently endeavored to apply it to this case. The facts recited in this opinion are uncontroverted unless specifically qualified in the opinion. Simply because there are other facts from which liability could arise under different circumstances, does not mean that the trial court or we are to abrogate our responsibility to determine whether, when the evidence is considered as a whole in the light most favorable to the plaintiff, defendant is entitled to a directed verdict on these facts. Specifically, we must decide whether as a matter of law defendant's conduct was unreasonable in the light of the kind of harm that befell plaintiff.

Theurer was scheduled to work for four hours on April 4. He asked Theurer if Theurer would be able to "handle the two shifts," and, according to the manager, Theurer responded, "Yes, it wouldn't be a problem." The manager testified that he also discussed with Theurer about getting some rest between shifts, and Theurer said "something about catching a nap in between." Once Theurer volunteered, he was scheduled for that shift.[2]

Third, Theurer never asked to be relieved from working the shift either before the shift started or during it; nor is there any evidence that defendant refused such a request. On Sunday, April 3, 1988, Theurer worked five and one-half hours for defendant, from 6 p.m. to 11:30 p.m. On April 4, he got up at 6:30 a.m. and left for school at about 7:15 a.m. However, when he got to school, he, his brother and a friend skipped the first four class periods of school. Theurer returned to class for the rest of the afternoon, arriving at defendant's to begin work at 3:30 p.m. He worked until 7:30 p.m. At that time, he told a friend that he was going on a date. Neither Theurer's supervisor nor anyone at the restaurant knew whether Theurer had rested before he arrived to begin the midnight shift. Theurer and his fellow employees finished the clean-up project at approximately 5 a.m. However, Theurer did not go home after the shift. Instead, he again remained voluntarily at the restaurant until 8 a.m. to open the grill. Sometime that morning, he requested, for the first time, to be relieved from a shift; the one that he was scheduled to work later that day. Defendant granted his request, and Theurer left the restaurant to go home.

---

[2] The majority says:

"The evidence, taken in the light most favorable to plaintiff, shows that Theurer did not, out of the blue, volunteer to take three shifts in one 24-hour period. Defendant affirmatively asked him to work those hours. Moreover, the evidence shows that defendant — not its employees — generally controlled all work assignments and that defendant penalized its employees for not working as assigned." 133 Or App at 526.

I do not understand what the majority means when it says that Theurer did not volunteer "out of the blue." The facts are as described. Theurer was among the group of employees of whom defendant asked if there was a "volunteer." There is *no* evidence that any employee had ever been penalized by defendant for not volunteering. The only evidence of "penalties" is that, if an employee desired not to work a particular shift for a "month or two," it could be difficult to obtain more hours at a later time. Also, if an employee once scheduled on a shift requested a change, it could be difficult to regain the lost hours on a different shift.

Fourth, Theurer was not on defendant's business premises and was on his own time when he drove home from work that morning. Theurer was not acting on defendant's behalf, nor did defendant have actual control of or the right to control Theurer's driving conduct or where he went after he got off work. Moreover, no omission or affirmative act by defendant prevented Theurer from choosing to have someone pick him up after work, or to take a nap in his car before driving home, or some other preventive measure. The accident occurred about 20 minutes after Theurer left work, at a location miles from where defendant conducted business. There is no evidence that plaintiff's presence on the road had any connection with the business of the restaurant. Fate would have it that he was one of many motorists traveling the highway that morning, and it was his vehicle that was in the way when Theurer fell asleep and his car crossed over the center line.

It is in this factual context that plaintiff brought his claim of negligence against defendant. Initially, plaintiff alleged two specifications of negligence:

> "Defendant was negligent in one or more of the following particulars which was a cause of damage to plaintiff:
>
> "a.    requiring Theurer to work too many hours without adequate rest; and
>
> "b.    permitting Theurer to drive a car when defendant knew or should have known that Theurer could not safely drive a car."

After plaintiff put on his case in chief, defendant moved for a directed verdict on the basis that plaintiff had failed to prove a cognizable claim of negligence.

Apparently, plaintiff knew he was in trouble. He had not proven that defendant "required" Theurer to work on the clean-up shift. Moreover, he was probably aware that there is no traditional concept of negligence liability which imposes the responsibility on an employer to prevent an employee from operating his own car once the employee's work shift is completed. (A theory that the majority's holding necessarily endorses if an employer is to avoid responsibility for its employee's negligence under circumstances like these.)

Instead, to counter the motion for the directed verdict, plaintiff moved to delete the above specifications of negligence and in lieu thereof, asked leave to allege:

> "Defendant was negligent in working Theurer more hours than was reasonable under the circumstances when defendant knew or in the exercise of reasonable care should have know that Theurer would operate a motor vehicle and be a hazard to himself and to others."

After hearing argument from the parties, the trial court granted plaintiff's motion to amend the complaint and, thereafter, denied defendant's motion for a directed verdict.

It is not clear from the parties' arguments or from the majority opinion what traditional concept of common law negligence is implicated by the allegation that defendant "worked" Theurer "more hours than was reasonable under the circumstances" or how proof of that allegation renders an employer liable for the employee's off-premises, nonwork-related negligence. If the allegation is meant to imply that Theurer had no choice but to work the shift, that, of course, is not the fact of the matter. Beyond that, there are only two potential points in time when defendant could be deemed to have exposed plaintiff to a risk of harm for having "worked" Theurer too many hours. The first point in time is when Theurer volunteered to work several days before April 5. The second point in time is on April 5.

With those points of time in mind, I turn to plaintiff's theory of the case. He argues that he

> "proved that McDonald's was actively at fault by its scheduling practices in overworking Theurer, and then permitting him to drive when it knew or should have known of his exhaustion-induced impairment. Thus, the proper focus of the case, and the one presented below is on McDonald's *managers*, who scheduled Matthew Theurer beyond that which was reasonable. These managers were on [*sic*] premises when they committed their negligent acts, and they did so within the course and scope of their employment. Thus, the scope of McDonald's liability for injuries caused by them must be analyzed under [*Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987)] just as it would be if they had negligently disposed of grease on [*sic*] premises, the grease found its way by the force of gravity off [*sic*] premises to a roadway, and the plaintiff was injured when his car skidded in the grease." (Emphasis in original.)

As I have pointed out, plaintiff's argument that defendant was negligent in permitting Theurer to drive on April 5 is not supported by any *specification of negligence* left in the case. That allegation was deleted in response to the motion for a directed verdict. That leaves plaintiff's argument about defendant's "scheduling practices." The only time defendant did any scheduling germane to this case was several days before April 5. Plaintiff invokes the rule of *Fazzolari* concerning defendant's conduct on that day.

In *Fazzolari*, the court said that the law does not provide a remedy in common law negligence for an injured plaintiff unless the kind of harm that the plaintiff suffered arises from "unreasonable" conduct that creates a foreseeable risk of harm to the particular plaintiff in the case. 303 Or at 17. Prior to *Fazzolari*, negligence had always been expressed in Oregon in terms of a breach of "duty of care" that was owed under the existing circumstances. The court explained in *Buchler v. Oregon Corrections Div.*, 316 Or 499, 853 P2d 798 (1993), that there is no substantive difference between the two tests; rather it is a semantical one:

> "The message of part of the discussion in *Fazzolari* is quite simple. 'Duty' and 'foreseeability' are each but verbal tools used in explanatory reasoning to answer the legal question, 'Should defendant pay for plaintiff's harm?' In either formulation, the use to which courts and litigants put the question remains the same. * * * Either formulation —duty or foreseeability—is a method of describing how the law limits the circumstances or conditions under which one member of society may expect another to pay for a harm suffered." 316 Or at 509.

The issue then is: Should defendant pay for plaintiff's harm because defendant scheduled Theurer to work on the clean-up shift? The majority bases its analysis on the facts that defendant endeavored to avoid scheduling double shifts for its employees, scheduled high school students to avoid working late hours, and knew that its employees previously were involved in automobile accidents as a result of falling asleep while driving home after working late shifts. Based on these facts, the majority concludes that, because the risk of harm to plaintiff resulting from defendant's conduct was "foreseeable," the issue of defendant's liability was a matter

for the jury. Thus, it was proper for the trial court to deny the motion for a directed verdict.

The majority's analysis is wrong because the facts relied on by it are not controlling unless defendant's conduct created an "unreasonable" risk of harm to plaintiff. In the context of this case, the question is whether defendant created an unreasonable risk of harm to every person on the highway that morning when it scheduled Theurer to work. That question must be answered in the light of the uncontroverted facts that Theurer was an adult employee, that defendant did not require him to work the shift, that Theurer assured defendant's manager that he would rest between shifts and that he would be able to handle the shift physically, that Theurer never asked to be relieved from the shift, and that the harm to plaintiff occurred off defendant's work premises as a result of an activity over which defendant had no right of control. By holding defendant responsible for the safety of all persons on the roadway, the majority makes "general foreseeability" the test for determining whether defendant's conduct is deemed "negligent."

The majority says that I read *Buchler* as having overruled *Fazzolari*. It is mistaken. What *Buchler* did was to explain that *Fazzolari* was not intended to mean that every common law negligence case goes to the jury simply because, in the chain of causation, certain conduct facilitated the harm that befell the plaintiff. Thus, "general foreseeability" is not the proper focus under the *Fazzolari* standard. That proposition is made clear by the Supreme Court's overruling of its holding in *Kimbler v. Stillwell*, 303 Or 23, 734 P2d 1344 (1987). In *Kimbler*, the defendant owned a store in which it kept guns and ammunition for sale in public view. A thief broke into the store, stole a gun, transported the gun off the store premises, and used it to kill the plaintiff's decedent. The court held that the complaint stated a claim in negligence because it alleged that it was foreseeable that when a store kept firearms in public view, a thief could steal one and use it to injure others. Therefore, the failure to employ more effective methods of preventing theft could constitute negligence because the defendant "facilitated" a foreseeable harm.

In *Buchler*, the court held that *Kimbler* was wrongly decided because its facts did not bring it within traditional common law negligence liability concepts.

> "Because the store is * * * being charged with responsibility for all intervening intentional criminal conduct that might conceivably occur, we think the breadth of *Kimbler's* holding cannot be supported by a foreseeability analysis that requires that a defendant, to be liable, must have *unreasonably* created the risk of the sort of harm to plaintiff that befell him." 316 Or at 511. (Emphasis in original.)

The court also noted,

> "Some have read a message into the *Fazzolari* trilogy that others do not find there. The assumed message was that all negligence claims based on general foreseeability of a plaintiff's harm would reach the jury. We do not think that the trilogy of decisions supports that reading of them. Our treatment of the *Kimbler* leg of the trilogy in this case should dispel any lingering doubts on that score." 316 Or at 511 n 8.

The holding of *Buchler* is that the "facilitation" of the risk of harm in terms of foreseeability is not enough by itself to get a common law negligence case to a jury. 316 Or at 511. The majority says, "There is, however, no such language in *Buchler*." *See* 133 Or App at 521 n 1. It would confine the rule of *Buchler* to cases involving an intervening criminal act. Although Theurer was never charged with a crime because he died as a result of the accident, conceivably he could have been charged with criminal assault under ORS 163.160 or a traffic offense on these facts. Regardless, the point is that, here as in *Buchler* and *Kimbler*, there must be evidence that the defendant's conduct also unreasonably created a risk of the type of harm that befell the plaintiff. That pre-requisite necessarily requires the application of recognized community standards of care to the defendant's conduct, a function reserved for the court and to be decided as a matter of law. *See* 316 Or at 509.

That inquiry involves considerations of public policy[3] which may or may not lead to the conclusion that a

---

[3] The majority suggests that the argument that defendant's conduct did not constitute cognizable negligence as a matter of law was not raised below. *See* 133 Or App at 527. Defendant's counsel told the court,

> "[E]mployment is a matter of contract between two parties. If there are not statutes that apply, I can contract the work for somebody for 36 hours straight. I'm not violating any law. I'm not being mistreated by the other party; I'm voluntarily doing it. If the two parties want to contract that way, and many times they do, that doesn't create fault on the part of one party for an accident that occurs after the employment ceases.

particular defendant is liable for the plaintiff's harm. For instance, in *Weiner v. Gamma Phi, ATO Frat.*, 258 Or 632, 458 P2d 18 (1971), the plaintiff was injured while riding in a vehicle being driven, on behalf of a fraternity, by an intoxicated minor after a fraternity party. Defendant Kienow, a member of the fraternity, knew of the party and that minors would be attending. Nonetheless, he purchased alcoholic beverages for the purpose of making them available to the party and had them delivered to the location where the party was to be held. The court declined to impose liability as to him, pointing out:

> "Considering then, the allegations of the complaint as they apply to defendant Kienow, it is our opinion that they are not sufficient to express a breach of duty to plaintiff in this case. 'Duty' in the sense we use it here is, as Prosser has described it, 'an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' Prosser, The Law of Torts 333 (3rd 1964). We are faced with such a problem of policy formulation in this case.

> "As we have already indicated, there may be circumstances under which a person could be held liable for allowing another to become dangerously intoxicated. However, we feel that liability should not be extended to one who acts only as a conduit in providing alcohol to those who directly serve it to others. A host has a choice of serving alcohol to whomsoever he pleases. In making that choice, he may decide to serve the alcohol illegally or under circumstances which create an unreasonable risk of harm to others. We do not think that the harmful consequence of that choice should be visited upon another who has no part in making it. And we take this view even where the one supplying the alcohol might have reason to believe that the host is likely to make an unwise choice in

---

"* * * * *

"What I'm really getting at is *there's no breach of duty because Matt Theurer was controlling his own destiny. We didn't have any duty to watch out for him after he left work.*

"* * * * *

"There are some cases where you might have some affirmative act where we take a step to do something that's clearly wrong, and I think that creates liability. Under the common law, I don't think if he agrees to work 36 hours straight and we say, okay, he can do it, I don't think there's liability." (Emphasis supplied.)

Clearly, defendant was making a policy argument under common law theory that employers should not be considered negligent under these circumstances.

dispensing it to others. The complaint does not allege that Kienow had any control over the direct dispensation of the alcohol at the party. We hold, therefore, that the demurrer to the complaint insofar as it relates to defendant Kienow was properly sustained." 258 Or at 640.

Thus, the task of this court is to evaluate the policy considerations that underlie the imposition of liability for defendant's conduct. In my assessment, those considerations dictate a holding as a matter of law that defendant's conduct at the time that it accepted Theurer's offer to work was not unreasonable. It was Theurer's choice to volunteer to work on April 5. Defendant had no part in that choice other than to extend the opportunity to him to work. Moreover, to reject Theurer's offer would have required the manager to predict several days in advance what Theurer's physical state would be on April 5 disregarding Theurer's promise that he would rest between shifts. Neither the majority nor plaintiff can point to any precedent that establishes a cognizable community standard of care which requires an employer to not take its adult employees at their word under such circumstances. The majority says, "defendant was much like a bartender who served alcoholic beverages to a visibly intoxicated person who then caused an automobile accident that harmed another." 133 Or App at 526-27. That is an inapt comparison. The proprietors of fast food restaurants in Oregon will be surprised to learn that scheduling an employee to work an extra shift after he volunteers carries with it the same legal consequences as the inherent hazard of serving alcoholic beverages to an intoxicated patron. The legal responsibility to determine the future physical condition of an employee to perform a volunteered task in the future necessarily lies with the employee since he, and only he, can control his activities to avoid excessive fatigue at that time. Additionally, the majority's holding makes employers, in their scheduling decisions, responsible for anticipating what their employees' off-premises activities will be after work; a responsibility of enormous implications and proportions. An example to consider: Every employee in every employment at some time experiences fatigue while working, including the members of this court. Inasmuch as our work schedule is determined approximately 30 days in advance, how would the docket

coordinator reasonably anticipate our ability to drive home safely after a day of argument next month?

Common law negligence has as its source traditional, well established community standards of care. As I have pointed out, plaintiff's theory is not based on the violation of such a standard. Moreover, apart from standards of common law negligence, if the majority opinion arises from a value judgment about when and to whom employers should be responsible for their employees' off-work negligence, then it has no authority to make that kind of social policy decision. The task of determining that kind of tort responsibility for allowing employees to work overtime is properly left to the legislature.

In summary, the majority opinion's adherence to a "general foreseeability" test results in grave consequences to the employers of this state. It improperly articulates a common law negligence standard that causes employers to be exposed to previously hereto unrecognized liability for the negligence of their employees off the work premises and requires them to protect those who lack any involvement with defendant's work activity miles away from the work premises. In effect, the opinion says to Oregon employers, "Do not schedule your employees in a manner that will cause fatigue, because if you do, you risk liability for negligence in the event that your employee acts in a negligent manner off-premises and after work." That is not the law of this state and it cannot be unreasonable conduct for an employer to accept an offer from an adult employee, made days in advance of the shift, to work overtime, insofar as the safety of motorists is concerned after the employee gets off work. Because the majority opinion extends the duty of care owed to the general public by employers in the scheduling of their employees' work shifts to beyond any reasonable boundary, I dissent.

Richardson, Deits and De Muniz, JJ., join in this dissent.